Mary Rose Quirk and Mary Ann Quirk, Minor, Appellees, v. William Schramm and Adolph Olson, Appellants.

Gen. No. 44,052.

294

Opinion filed February 4, 1948. Released for publication February 20, 1948.

Ross, Berchem & Schwantes, of Chicago, for appellants.

Kamin & Gleason and Earl Ross, all of Chicago, for appellees.

Mr. Presiding Justice Lewe delivered the opinion of the court.

This is an action to recover damages for personal injuries. A trial before the court and a jury resulted in verdicts and judgments in favor of plaintiffs Mary Rose Quirk and Mary Ann Quirk, a minor, for $8,000 and $2, respectively, and against both defendants. Defendants' motions for judgment notwithstanding the verdict and, in the alternative, for a new trial were overruled. Defendants appeal.

On January 1, 1945, between 7:00 and 7:30 p. m., Raymond Quirk was driving his 1941 Plymouth automobile north on Western avenue in the City of Chicago, accompanied by his wife, plaintiff Mary Rose Quirk, who was seated beside him and holding her four-year-old daughter, plaintiff Mary Ann Quirk, on her lap.

About one hundred fifty feet south of the intersection of 81st street the Quirk automobile ran into the rear end of an unlighted station wagon owned by the defendant William Schramm and operated on the day of the occurrence by his son-in-law defendant Adolph Olson.

About 1:30 o'clock in the afternoon as the station wagon was being driven by defendant Olson north on Western avenue south of the intersection of 81st street the motor ceased to function, and the battery "died" when Olson tried to get the motor started. The unlighted station wagon remained in this position on Western avenue until about 7:30 in the evening when it was struck by the Quirk automobile.

There are two street car tracks running down the center of Western avenue at the intersection of 81st street, and the distance between the east rail of the northbound tracks and the east curb at this point is twenty-seven feet. At the time of the accident there was considerable snow covering Western avenue and a snow bank along the east curb two or three feet high extending into the street from the curb three or four feet. As the Quirk automobile neared the intersection of 81st street it was traveling at about twenty

miles per hour in a rut in the snow about five feet east of the northbound street car tracks.

Defendants contend that plaintiff Mary Quirk was guilty of contributory negligence and therefore the court erred in denying defendants' motion for a judgment notwithstanding the verdict.

Plaintiff Mary Quirk testified in her own behalf that on the night of the accident it was dark, cold, and snowing slightly; that it was "a little foggy" and although the fog was clearing it "just seemed to be spotted"; that she could see ahead "forty or fifty feet; as we drove along I wasn't paying much attention"; that she "happened to look up" when she heard her husband exclaim, "My God," and saw defendants' station wagon a few feet away directly in front of her; that it was snowing "just at or before the accident occurred"; and that "the object in front of us appeared white to me."

Raymond Quirk, called by plaintiffs, testified that he was traveling in a rut three or four inches deep about five feet east of the northbound street car tracks; that the lights on his automobile were "standard sealed beam lights"; that "they were regular driving lights" and illuminated the roadway for a distance of fifteen or twenty feet; that he saw a snow-covered object fifteen or twenty feet directly in his path; and that his car traveled five or six feet after it came in contact with the unlighted station wagon.

Milton L. Hoge, called by plaintiffs, testified in substance that he witnessed the collision between the Quirk automobile and defendants' station wagon between 7:00 and 7:30 p. m.; that "it was dusk" and "the weather was very murky and hazy," and the temperature was about zero; that he was driving south on Western avenue, traveling about twenty-five miles an hour, covering the outside or west rail of the car tracks because of "the rutted condition there"; that when he reached a point about halfway between 80th

and 81st street he saw "the headlights of an on-coming car flare up, swing to the left for a moment and then settle down"; that there were no lights on the station wagon either front or rear; that there was a slight covering of snow on top of the station wagon; and that he first noticed the lights of the Quirk automobile when the impact occurred.

Defendants argue that the evidence clearly shows that the plaintiffs failed to comply with the statute of Illinois in reference to their headlights, Smith-Hurd Illinois Annotated Statutes, ch. 95½, sec. 200, and cite in support of their position *Johnson v. Gustafson,* 233 Ill. App. 216; *Sugru v. Highland Park Yellow Cab Co.,* 251 Ill. App. 99; and *Price v. Illinois Bell Tel. Co.,* 269 Ill. App. 581. In all of the cases last cited the facts are dissimilar to those in the case at bar. An examination of them discloses that the automobiles involved though equipped with headlights were using their dimmers or cowl lights while driving.

In the instant case the plaintiffs' evidence tends to prove that the snow-covered, unlighted, station wagon blended with the background, thus making it virtually invisible even with the headlights of the Quirk automobile burning.

Moreover, plaintiff Mary Quirk and her husband, the driver of the automobile, had no reason to anticipate that defendants' station wagon would suddenly loom up in the haze as an obstruction in their path. Under these circumstances we think the question of whether the plaintiff was guilty of contributory negligence was for the jury to determine, and the court properly denied the motion for judgment notwithstanding the verdict.

Defendants maintain that plaintiffs have failed to prove that defendants were guilty of negligence. They say that the mechanical failure of the station wagon was no fault of theirs; that they had no choice as to whether they would permit their station wagon to

remain upon the roadway or not; and that this exigency excuses them for leaving the station wagon on the highway in violation of the statute, relying upon *Frochter v. Arenholz,* 242 Ill. App. 93, and *Sugru v. Highland Park Yellow Cab Co.,* 251 Ill. App. 99, to sustain their theory.

■ According to the testimony of defendant Olson, after the station wagon stopped he made several trips to a restaurant located at 79th street and Western avenue, where he telephoned his brother-in-law for a tow truck, and because of the cold weather he went back and forth from the station wagon to the restaurant five or six times seeking shelter there. Obviously the station wagon was unattended for considerable periods in the afternoon and even after it became dark. Olson admits that he was not present when the accident took place and that the tow truck did not appear until some time afterwards. So far as the evidence shows, defendant Olson made no attempt to provide warning lights for his stalled unlighted station wagon though a period of about seven hours elapsed between the time he left his car on the highway and the occurrence of the accident. In view of these circumstances we think the jury could find that defendants were guilty of negligence.

Defendants urge that the court erred in refusing to give defendants' instruction number two which incorporates chapter 95½, section 200, and provides in substance that during the period between sunrise and sunset every motor vehicle shall carry two lighted lamps showing white lights visible at least five hundred feet in the direction toward which the motor vehicle is proceeding. It is not controverted that the Quirk automobile carried standard sealed-beam headlights and that they were lighted before and after the impact.

■■ Plaintiffs' witness Hoge testified that he saw the headlights of the Quirk car immediately before the impact when he reached a point midway between 80th

and 81st streets. According to defendants' testimony this block is five hundred feet long. The fact that, notwithstanding the poor visibility at the time of the occurrence, Hoge could see the headlights of the Quirk automobile at least four hundred feet away would warrant the jury in concluding that under normal weather conditions they would be visible for at least five hundred feet as required by the statute. Defendants' argument is based on language found in the cases of *Johnson v. Gustafson,* 233 Ill. App. 216 and *Sugru v. Highland Park Yellow Cab Co.,* 251 Ill. App. 99, which construed a similar statute. By application of the rule of construction announced in the *Johnson* and *Sugru* cases they argue in effect that the statute incorporated in the instruction complained of in the instant case means that headlights of an automobile are required to illuminate the highway so as to enable the driver to see at least five hundred feet in the direction in which he is driving. In *Miller v. Burch,* 254 Ill. App. 387, the court, after analyzing the *Johnson* and *Sugru* cases, said at page 397, ''We do not think our courts have in any case construed our statute as meaning the light shall so illuminate the road that the driver 'could see at least two hundred feet in the direction in which he was driving,' nor do we think they have ever held that the failure to have such lights or to so use them if he has them of itself alone constitutes negligence, so that the proof of that fact alone is sufficient to establish negligence.''

We think that the *Miller* case is best reasoned and most analogous to the present case, and that the trial court properly refused defendants' instruction number two.

Defendants contend that the amount of the verdict in favor of the plaintiff Mary Quirk is excessive.

The evidence shows that shortly after the accident plaintiff was taken to a hospital nearby where she was treated by one Doctor Klabacha. She remained in

the hospital for three days and there a cast was applied to her arm. The cast was removed after about ten weeks. According to plaintiff's testimony she saw Doctor Klabacha for a period of a month or five weeks after the injury. Thereafter Doctor Klabacha joined the armed services and she consulted and received treatment from other physicians. Doctor Weiner testified that an examination of certain X-rays taken of the plaintiff's arm disclosed a fracture at the junction of the shaft and head of the humerus; that the fracture extended into the joint itself, and that the injury resulted in limitation of motion in the arm. In response to a hypothetical question Doctor Weiner stated that the condition is permanent. Plaintiff testified that before the injury she did the cooking and performed all of the household duties; that after the injury she employed a maid to do the heavy work about the house; that she suffers pain when she raises her arm above a certain point or brings it back; that she is unable to use the arm for an hour or two in the morning and feels a certain numbness of the fingers. So far as the record shows, defendants did not offer any testimony to refute the testimony given by plaintiff's medical witnesses, Doctor Klabacha and Doctor Weiner.

The question of damages is peculiarly one of fact for the jury (*Ford v. Friel*, 330 Ill. App. 136). No complaint is made with respect to the instructions relating to the measure of damages, nor does it appear that the size of the verdict was the result of prejudice or passion on the part of the jury, and we are, therefore, not disposed to disturb it.

Complaint is also made by the defendants with respect to the testimony at the trial in September of 1946 by Doctor Klabacha in reference to subjective complaints of pain, on the ground that he was not her attending physician at the time of the trial. The evidence shows that Doctor Klabacha treated plaintiff

Mary Quirk for a period of four or five weeks commencing on the evening of the occurrence ánd that about a year and seven months had elapsed from the time he had last treated her to the time of the examination made at the court house for the purpose of testifying. Defendants rely on *Greinke v. Chicago City Ry. Co.*, 234 Ill. 564, and *Thomas v. Illinois Power & Light Corp.*, 247 Ill. App. 378. An examination of these cases discloses that in each case the physician who was called as a witness had not treated the injured person but had made an examination solely as a basis upon which to found an opinion to be given in a trial. It is not disputed that Doctor Klabacha was plaintiff's attending physician, and we do not think that his absence in the army changed his status as an attending physician.

For the reasons given, the judgments are affirmed.

*Judgments affirmed.*

KILEY and BURKE, JJ., concur.