MARTIN BICKEL, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

(No. 58220; 

First District (3rd Division)—January 23, 1975.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellant.

Arnold Grubman, of Chicago (James G. O'Donohue and Philip J. Rock, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Martin Bickel, brought action against the defendant City of Chicago for personal injuries sustained in a fall on a City sidewalk. Following a trial without a jury, judgment was entered in favor of plaintiff in the amount of $110,000. Defendant appeals, contending that the trial court erred in failing to dismiss the action because of a fatal defect in the written statutory notice of injury served on defendant, that plaintiff failed to prove that he was free from contributory negligence, and that the judgment is excessive.

Plaintiff's injuries were sustained in a fall at the curb of the southeast corner of Franklin and Washington Streets in the City of Chicago, on November 28, 1969, at which time sections 8—102 and 8—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1969, ch. 85, pars. 8—102 and 8—103) provided in pertinent part:

"§ 8—102. Within 6 months from the date that the injury or cause of action, referred to in Sections 8—102 and 8—103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, * * * must personally serve in the Office of the Secretary or Clerk, * * * a written statement, * * * giving the name of the person to whom the cause of action has accrued, * * * and the name and address of the treating hospital or hospitals, if any.

§ 8—103. If the notice under Section 8—102 is not served as provided therein, any such civil action commenced against a local public entity, * * * shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing."

The requirement of section 8—102 that the notice include the name and address of the treating hospital or hospitals, if any, was added by a 1969 amendment which first became effective on October 10, 1969.

On December 22, 1969, plaintiff's attorney served defendant with a written notice of claim for personal injuries which included "Hospital: Chicago Wesley Memorial, 250 E. Superior St., Chicago, Illinois." Plaintiff had in fact received emergency care at Chicago Wesley Memorial Hospital on the date of the accident. Subsequently, but prior to the service of the statutory notice, plaintiff had received certain medical services for his injuries at Lutheran General Hospital on seven separate occasions. At the opening of trial, defendant moved that the suit be dismissed under section 8—103 because the plaintiff's notice did not list all of the treating hospitals. The trial court denied the motion upon the basis that a "treating hospital" is one which provides hospitalization rather than merely extending out-patient care. The cause then proceeded to trial without a jury.

Plaintiff testified that on the date of the accident he was taken to Wesley Memorial Hospital where his left leg was X-rayed in the emergency room and an intern advised him to keep his leg elevated and to apply ice packs. That evening plaintiff called his personal physician, Dr. Rasmus Harr, who advised him to go to Lutheran General Hospital on the following day. There the plaintiff's leg was again X-rayed; an elastic

bandage was applied, he was advised to keep the leg elevated, and Dr. Harr gave him a prescription. He returned to Lutheran General Hospital 2 or 3 days later and was again told to keep his leg elevated. Plaintiff further testified that he began receiving therapy at Lutheran General Hospital in December of 1969, which at first consisted of whirlpool treatments about every other day.

Dr. Rasmus Harr testified that he was associated with Lutheran General Hospital and was plaintiff's family physician. Although he did not recall receiving a telephone call from plaintiff on November 28, 1969, he did receive a call from the emergency room of Lutheran General Hospital on November 29, 1969, advising him that plaintiff was there. He directed that plaintiff's leg be X-rayed, an elastic bandage applied, and that plaintiff be told to elevate his leg and apply ice packs. He saw plaintiff at Lutheran General Hospital on the following day and again at his private office on December 2, 1969. Dr. Harr stated that he prescribed physiotherapy for which he directed plaintiff to the physiotherapy department of Lutheran General Hospital, where he often saw him when he came in for treatment. He further testified that the hospital's records indicate that plaintiff began receiving physiotherapy and massage on December 8, 1969, for which he was charged directly by the hospital. A paid bill from the hospital was received in evidence reflecting that plaintiff had physiotherapy on the 9th, 11th, 12th, 15th, 17th and 19th of December, 1969.

The written notice served on defendant was received in evidence over the renewed objection of defendant that the notice was defective.

## I.

Initially, defendant contends that the written notice served upon it was fatally defective in failing to list all of the treating hospitals. The trial court accepted plaintiff's argument that the treating hospital or hospitals, as required by the statute, must be equated with hospitalization, and concluded that out-patient care was not within the scope of those terms. Treatment is defined in Webster's 1966 Third New International Dictionary as "the action or manner of treating a patient medically or surgically." Treatment has been defined as a broad term covering all the steps taken to effect a cure of injury or disease, including examination and diagnosis, as well as the application of remedies. (*Pfahler v. Eclipse Pioneer Division of Bendix Aviation Corp.* (1956), 21 N.J. 486, 122 A.2d 644; *Hester v. Ford* (1930), 221 Ala. 592, 130 So. 203.) In the instant case, between the date of the accident and the service of the statutory notice upon defendant, plaintiff received diagnostic service by way of X-ray,

as well as remedial care, at the emergency room and Physiotherapy Department of Lutheran General Hospital, albeit at the direction of his personal physician.

The trial court erred in concluding that in this instance Lutheran General Hospital was not a treating hospital within the provisions of section 8—102. However, under the principle that it is the correctness of the ruling which is reviewed and not the reasons expressed by the trial court, the question still arises whether the failure to include said hospital in the statutory notice is fatal to the maintenance of the present action. (*Cady v. Hartford Fire Insurance Co.* (1965), 56 Ill.App.2d 429, 206 N.E.2d 535.) Defendant maintains that strict compliance is required under the above statute and cites in support of this argument *Rapacz v. Township High School Dist. No. 207* (1971), 2 Ill.App.3d 1095, 278 N.E.2d 540; *Hoffman v. Evans* (1970), 129 Ill.App.2d 439, 263 N.E.2d 140; and *Williams v. City of Gibson* (1970), 129 Ill.App.2d 431, 263 N.E.2d 138. It is significant that *Rapacz* and *Williams* involved erroneous dates of accident and *Hoffman* involved a complete failure to give notice. Plaintiff responds that substantial compliance rather than strict compliance is the proper standard for determining the sufficiency of the statutory notice, especially where, as here, the omission was inadvertent, plaintiff has not been shown to have acted in bad faith, and defendant was not misled or prejudiced in any way. Plaintiff relies on *McComb v. City of Chicago* (1914), 263 Ill. 510, 105 N.E. 294; *Klein v. City of Chicago* (1973), 10 Ill.App.3d 670, 294 N.E.2d 755; *Redmond v. City of Chicago* (1973), 10 Ill.App.3d 567, 294 N.E.2d 761; *Bryant v. City of Chicago* (1943), 319 Ill.App. 524, 49 N.E.2d 654; and *Lutsch v. City of Chicago* (1943), 318 Ill.App. 156, 47 N.E.2d 545.

In *Ouimette v. City of Chicago* (1909), 242 Ill. 501, 90 N.E. 300, the supreme court held that statutes requiring the giving of notice before the institution of a civil suit against a public entity are to be strictly construed and the notice must follow the requirements of the statute. There, the notice erroneously stated the date of the accident as November 10, 1905, instead of the occurrence date of October 10, 1905. The strict standard compliance has also been applied in *Ramos v. Armstrong* (1972), 8 Ill.App.3d 503, 289 N.E.2d 709; *Fannon v. City of Aurora* (1969), 106 Ill.App.2d 408, 245 N.E.2d 286; *Frowner v. Chicago Transit Authority* (1960), 25 Ill.App.2d 312, 167 N.E.2d 26; and *Cipich v. City of Chicago* (1946), 328 Ill.App. 580, 66 N.E.2d 527.

However, since 1914 a more liberal approach has been adopted for the testing of the sufficiency of statutory notices. In *McComb v. City of Chicago* (1914), 263 Ill. 510, 105 N.E. 294, plaintiff's notice named a par-

ticular intersection but failed to specify which corner was involved where an alleged fall occurred on a defective sidewalk. The Illinois Supreme Court held that the notice sufficiently described the place or location and that it provided enough information to enable defendant to find the exact place of the accident by the exercise of reasonable diligence. Subsequently, in *Minnis v. Friend* (1935), 360 Ill. 328, 196 N.E. 191, the court, in considering the sufficiency of an unsigned notice, inferentially approved the more liberal approach taken in *McComb* by distinguishing that case which had been cited by plaintiff, on the basis that it would have been applicable if plaintiff had made "some attempt" to comply with the requirement that the notice must be signed. Such attempt to comply occurred in *Musser v. City of Chicago* (1938), 293 Ill.App. 625, 12 N.E.2d 336 (abstract opinion). There the notice did not contain the name and address of the physician who attended the plaintiff's injuries during the 24 days immediately following the accident, but only contained the name and address of the physician who took up treatment where the first attending physician left off. On the morning following the injury, the first physician set plaintiff's fractured wrist in a plaster cast; later, the first physician found the fracture had not been properly reduced, and it was necessary to break and reset the injured wrist. This court there held that the notice which "named the physician who commenced to treat her just a month after the accident and who was her physician at the time notice was given" was a compliance with the statute.

Numerous cases followed which applied the less stringent standard. The notice was held sufficient if it directed the attention of the city officials with reasonable certainty to the place of accident. (*Klein v. City of Chicago; Bryant v. City of Chicago.*) Notice was held adequate even though the plaintiff's listed street address placed his residence outside the boundaries of the listed city. (*Fromme v. City of Girard* (1938), 295 Ill.App. 144, 14 N.E.2d 690.) A notice was held adequate although the incorrect address of plaintiff's physician was given. (*Schmidt v. City of Chicago* (1936), 284 Ill.App. 570, 1 N.E.2d 234.) The service of a notice was held sufficient where an unsigned copy of the original signed notice was left with the defendant. (*Klapkowski v. City of Chicago* (1959), 23 Ill.App.2d 222, 161 N.E.2d 865; and *Lutsch v. City of Chicago.*)

Added impetus was given to the liberal approach in *Reynolds v. City of Tuscola* (1971), 48 Ill.2d 339, 270 N.E.2d 415, where the court held sufficient plaintiff's notice which had been served by registered mail rather than personally. The court there stated that the notice statute was in derogation of the common law and must therefore be strictly con-

strued against the public entity which in fact had notice of the injury and other particulars and that such statute should be liberally construed and should not be used as a stumbling block or pitfall to prevent recovery by meritorious claimants.

This liberalized rationale was later applied to the requirement that the notice state the place or location of the injury in *Meisenheimer v. City of Chester* (1973), 15 Ill.App.3d 1088, 305 N.E.2d 322. There the court held sufficient plaintiff's notice which merely listed a street which ran the entire length of defendant city as the place where she had tripped over a hole in the pavement. The defendant city had actual knowledge of the location of the hole. The court stated at page 1091:

> "By grounding the decision in part on the fact that the Tort Immunity Act is in derogation of the common-law action against local public entities and must be strictly construed against the local public entity, the *Reynolds* decision outmodes cases decided before the 1965 enactment of the Tort Immunity Act. In our opinion, the language of *Reynolds* is plain and unambiguous in requiring a liberal interpretation of the notice statute, as evidenced by such recent decision [*sic*] as *Helle v. Brush* (1973), 53 Ill.2d 405, 292 N.E.2d 372; *Eckel v. City of Sullivan* (1972), 3 Ill.App.3d 342, 277 N.E.2d 890; and *Klein v. City of Chicago* (1973), 10 Ill.App.3d 670, 294 N.E.2d 755."

The court there stated that the rule of strict compliance was recently applied in *Rapacz*, which involved a notice with an erroneous date of accident, and in *Ramos*, in which the address of plaintiff was omitted. However, as stated in *Ouimette v. City of Chicago, supra*, at page 507, "it must be held that the wrong date in the notice is, in effect, the same as if no date at all were given." Thus, *Rapacz*, in omitting the date of accident, and *Ramos*, in failing to state the plaintiff's address, each in itself constituted a complete omission of an essential element, unlike the facts in the instant case.

In holding insufficient a written notice which nowhere described the general nature of the accident, in *Nikolic v. City of Chicago* (1973), 18 Ill.App.3d 426, 305 N.E.2d 325 (abstract opinion), again a complete omission of a necessary element of the required notice, we stated: "In so finding, we are not unmindful of the cases which plaintiff urges in support of his contention that where a substantial attempt to comply with the notice provisions of the statute is made, the notice will be deemed sufficient."

■■ The sufficiency of a notice as to the treating hospital element, as first required by the 1969 amendment, was considered in *Saragusa v. City*

*of Chicago* (1974), 18 Ill.App.3d 945, 310 N.E.2d 849. There plaintiff sued defendant city for injuries sustained April 20, 1970, and had served a statutory notice which completely omitted naming any treating hospital. Although at least three physicians attended plaintiff, and the notice named only one, the city did not raise this as a defect. The court in a per curiam opinion held that since plaintiff had made no attempt whatsoever to comply with the treating hospital requirement of the statute, the notice therefore lacked a necessary element and was fatally defective. However, the court added, at page 950, "Since plaintiff has not shown that she made 'some attempt' to comply with this provision, we can make no appraisal of whether the attempt was 'substantial.'" The court added at pages 951-52:

> "The 1969 amendment has for the first time required that the written statement give the name and address of the treating hospital or hospitals, if any. This requirement was an essential element of the notice. The plaintiff omitted this element altogether from her notice and she has not shown that she made any attempt and certainly no substantial attempt to comply with this provision, as she was required to do by the language of *Minnis v. Friend*, 360 Ill. 328, 196 N.E. 191."

It is to be noted that the specific holding that there was a total omission of a necessary element is not any attempt at compliance. The further statement that *Minnis* required a "substantial attempt to comply" was not essential to the determination. In fact, *Minnis* does not so require a *substantial attempt*, but instead, states at page 333:

> "There [in *McComb*] had been an attempt to comply with the statute, and our holding was that location had been given which was sufficiently definite to comply with the statute. The *McComb case* would be applicable if there had been some attempt to comply with the requirement of the statute that the notice be signed and if the question were as to the sufficiency of the signature." (360 Ill. 328, 333.)

Accordingly, here the test to be applied is whether there is some attempt to designate the treating hospital or hospitals, and if so, the sufficiency of the designation set forth in the notice.

■■ In the instant case we unquestionably have "some attempt to comply" with the treating hospital requirement of the statute and the sufficiency of that compliance is directly in issue. Clearly, the allegation of actual notice does not satisfy the statutory requirement of written notice. (*Housewright v. City of LaHarpe* (1972), 51 Ill.2d 357, 282 N.E.2d 437; *Ouimette v. City of Chicago*.) The applicable rules may be

summarized. The statute is strictly construed to require that the written notice must contain each of the essential elements therein set forth. A notice which completely omits one or more of the essential elements is insufficient. On the other hand, the statute is to be liberally construed with respect to the sufficiency of the elements as set forth in the written notice. Where the particular element as set forth is reasonably sufficient to fulfill the requirements of the statute and where the public entity has not been misled or prejudiced thereby, the notice itself is sufficient. Here, the written notice was promptly served on defendant well within a month of the occurrence; the suit was filed on February 17, 1970, which was less than 3 months from the occurrence date: There is no evidence or claim by defendant that the City was misled or prejudiced by the notice. In accord with *Minnis v. Friend*, plaintiff has made "some attempt to comply" with the treating hospital element and has fully complied as to safety. At trial plaintiff testified that for 20 years he was employed on the 4:30 P.M. to 12:30 A.M. shift at the Illinois Bell Telephone Company located east of Franklin Street, on the north side of Washington Street in downtown Chicago. His normal routine was to park his car at a lot on the northwest corner of Franklin and Madison Streets, then walk north on the west side of Franklin to a coffee shop on the northwest corner of Franklin and Washington Streets. After having coffee he would proceed east on the north side of Washington Street to his place of employment. He testified that on November 28, 1969, at about 4:15 P.M., he followed his usual routine and approached Washington Street, walking north on the west side of Franklin. Due to the heavy post-Thanksgiving pedestrian traffic on Washington Street, he decided to cross Franklin Street to the southeast corner of the intersection, intending to cross Washington along the east side of Franklin Street, then

the other elements required by the statute. The notice contained the name and address of the first hospital at which plaintiff had been treated, and only omitted the one other hospital where further treatment was received. The information was sufficiently complete to constitute substantial compliance with the treating hospital requirement of the statute. (See *Musser v. City of Chicago*.) Therefore, the trial court did not err in holding the notice sufficient. The refusal to dismiss the present action pursuant to section 8—103 and the admission of the notice into evidence were proper.

## II.

Defendant next contends that plaintiff failed to prove that he was free from contributory negligence but in fact that the evidence of plaintiff and his witnesses was that he was not exercising due care for his own

to proceed east to the telephone company. He walked east along the south side of the intersection across Franklin Street, then turned north to cross Washington Street. He was walking about 1 foot behind a man. Plaintiff stepped off the sidewalk with his left foot and realized there was no curb at that point; he lost his balance and fell forward onto his left side, injuring his lower left leg. He got up and "hobbled" over to a mailbox and supported himself for "a while." He then went directly to his place of employment and a coworker took him to Wesley Memorial Hospital. On cross-examination plaintiff further testified that prior to his fall he had looked at part of the curbing at the southeast corner of the intersection but did not see, nor did he know of at that time or earlier, the condition of the curb at the point where he had fallen. He testified that he was not late for work at the time of the accident, and he was not carrying anything. He stated that as he stepped off the walk at the corner where he fell he was looking straight ahead at the back of the man in front of him and not at the curbing.

Richard Greiss, plaintiff's supervisor, testified that plaintiff reported late for work and was then taken to the hospital by another employee. He stated that the curb in question had been damaged in late 1939 or early 1940 in a street-car accident which he had witnessed. Many years later he had told at least one telephone company employee how the curbing had been damaged. He also testified that plaintiff occasionally drove him to the train station and that plaintiff "mostly" parked his car at a garage on the northeast corner of Franklin and Madison Streets.

Defendant argues that the testimony of the witnesses indicates, first, that plaintiff observed the broken curbing prior to his fall and either failed to take cognizance of it or failed to avoid it; second, that plaintiff must have had prior knowledge of the defect, either from hearing Greiss talk about the street-car accident or from having walked past that particular corner some time in the past; third, that plaintiff most likely fell from his own carelessness as a result of his haste because he was late for work.

■■ What constitutes contributory negligence is a question which must be determined from the facts and circumstances of each case. (*Winston v. Chicago Transit Authority* (1971), 2 Ill.App.3d 151, 276 N.E.2d 65.) In adopting a standard for reviewing such determination this court in *Klein v. City of Chicago* (1973), 10 Ill.App.3d 670, 675, 294 N.E.2d 755, quoted *Upton v. Parkway Motors, Inc.*, 90 Ill.App.2d 426, 429-30, 232 N.E.2d 513:

> "Our courts have held repeatedly that, in the face of contra-dictory testimony, the findings of fact of the trial court will not be disturbed unless clearly contrary to the manifest weight of the

evidence. [Citations.] In the proceedings below, the court had the opportunity to watch and listen to the witnesses, to observe their demeanor and to reflect upon their responses. That court is therefore in a far better position to determine the relative credibility of the various witnesses than is this court, whose review of the testimony is limited to reading the printed questions and answers."

In the instant case, the trial court's determination that plaintiff was in the exercise of due care for his own safety at the time of the accident was made upon the basis of testimony which was not even conflicting. Although defendant argues to the contrary, plaintiff specifically stated that he did not see the curbing at the point where the fall occurred. He further testified that he was not late for work at the time and that the fall happened at approximately 4:15 P.M., some 15 minutes before he was due at his place of employment. Defendant's assertions as to what Richard Greiss must have told plaintiff as to the origin of the broken curb, or that plaintiff must have walked past that particular corner some time in the past, are purely speculative. A review of the record leads to the conclusion that the trial court's finding that plaintiff was free from contributory negligence was not contrary to the manifest weight of the evidence.

## III.

Defendant's final contention is that the amount of the judgment awarded to plaintiff was grossly excessive, arguing that plaintiff failed to prove either the need for future medical care or the necessity for compensation for lost future earnings. Plaintiff, who was 50 years of age at the time of the accident, was a high-school graduate and had been employed for 20 years as a telephone-equipment-maintenance man. His only other training was a brief period many years prior in motel management. Following his injury, plaintiff was temporarily assigned to a desk job at the telephone company until he aggravated his condition while attempting to change a fuse. He was later placed on a disability pension. On the advice of Dr. Harr, plaintiff moved to Arizona where he was unsuccessful in obtaining employment due to the unwillingness of prospective employers to hire a person on disability pension.

Plaintiff testified that the injury to his left leg continues to result in periodic pain. His fall produced a rupture of the gastrocnemius muscle, the principal muscle of the lower leg. The four physicians who testified in behalf of plaintiff and defendant agreed that the injury was of a permanent nature and would prevent plaintiff from continuing as an

equipment maintenance man. Dr. Harr, plaintiff's personal physician, testified that plaintiff's injury was not operable and that future physiotherapy treatments and medication might prove beneficial on occasion. Dr. Allen Hirschtick, an orthopedic surgeon, testified for plaintiff that although plaintiff could physically sit at a desk, such activity would produce pain if continued for long periods, if more than a few steps of walking were required and during weather changes. Dr. Hirschtick stated that in his opinion plaintiff could not do substantial gainful work, considering his status in life, his education, and his previous type of employment. Dr. Ellsworth Tannehill, an orthopedic surgeon, testified for defendant that in his opinion plaintiff could do a limited type of work; he estimated that plaintiff's injury resulted in a 25- to 30-percent loss of use of his left leg.

In closing argument, plaintiff requested an award of $250,000, suggesting that $11,906 be included for past and future medical expenses, $7,700 for future medical costs, and $116,520 for lost future earnings until he was 65 years of age. The trial court awarded plaintiff a judgment of $110,000.

■■ In *Lau v. West Towns Bus Co.* (1959), 16 Ill.2d 442, 158 N.E.2d 63, the supreme court considered the issue of what should be the standard of review as to whether a jury verdict is excessive, stating at page 453:

> "Each verdict for a personal injury must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions. *Johnson v. Eckberg*, 94 Ill.App. 635.
>
> We are not unmindful of our obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice. This we have done, and we conclude from the evidence that although the verdict may well be in excess of the amount which the judges of this court would have allowed if they had heard the evidence and made the original determination, yet we do not believe that it is so excessive as to show passion or prejudice."

This standard is equally applicable where the amount of the judgment has been determined by a trial court sitting as the trier of fact. Defendant here challenges the sufficiency of the evidence to establish the need for future medical care for plaintiff and his future employment disability. Upon a review of the testimony presented by plaintiff's medical witnesses and the testimony of plaintiff, we conclude that the need for compensat-

ing plaintiff for future medical expenses and lost future earnings was adequately proved. Given the sufficiency of the evidence to establish those factors, the amount of the award granted by the trial court cannot be said to be so excessive as to indicate passion or prejudice on its part.

For the reasons herein stated, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and DEMPSEY, JJ., concur.