STRYA MARGOLIS, Plaintiff-Appellant, *v.* CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

First District (5th Division) No. 78-190

Opinion filed March 16, 1979.

Gordon, Schaefer & Gordon, Ltd., of Chicago, for appellant.

Edward J. Egan, of Chicago (Joseph V. Roddy, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order dismissing plaintiff's action for damages because of personal injuries allegedly received while a passenger in a train of the Chicago Transit Authority (CTA). The dismissal was grounded on findings that a statutory notice required of plaintiff was defective and that the operator of the train (sued as John Doe) was not served with summons within the applicable limitations period. The issues presented are whether her notice substantially complied with statutory requirements and whether the limitations period applicable to the motorman should be tolled, and the CTA precluded from raising it as a defense because the CTA had lulled plaintiff into a false sense of security.

Within six months of the occurrence, plaintiff served a notice on the secretary and general counsel of CTA which stated that at approximately 7:40 p.m. on March 28, 1974, she was thrown from her seat when the CTA train in which she was riding lurched while negotiating the last northbound turn before the Kimball station at too high a rate of speed. In addition, the notice listed the name and address of Dr. I. Sobel as her attending physician and the name and address of Weiss Memorial as the treating hospital. A copy of the notice was attached as an exhibit to the complaint filed March 26, 1975, seeking damages against CTA and John Doe, the unknown operator of the train. In its answer, CTA admitted "service of what purports to be a notice * * * but denies any statement of negligence contained in said notice."

On July 12, 1977, plaintiff moved to advance the cause for trial and, in an affidavit supporting the motion, her counsel stated that "plaintiff has a tumor in the left axilla and breast and that it is the theory of the plaintiff that her cancer condition was aggravated as a result of this occurrence and that her life will be greatly shortened." Attached to the motion was a copy of a letter from Dr. Charles B. Clayman, which stated that plaintiff's

survival may possibly be decreased by the presence of the tumor. Dr. Clayman's letterhead indicated that he is a gastroenterologist and is associated in the practice of medicine with two cardiologists, Drs. Jerome H. Hirschmann and Paul W. Saltzman.

On August 18, 1977, plaintiff in answers to interrogatories which had been served by CTA on April 25, 1975, described the injuries she sustained as a result of the occurrence in question as "[m]ultiple injuries and right leg." In answer to a question as to persons having knowledge of the occurrence and her injuries, she listed 10 physicians—including Drs. Sobel, Clayman, Hirschmann, and Saltzman.

Shortly thereafter, the CTA moved to dismiss the complaint as to both defendants on grounds that plaintiff's statutory notice was defective in that an attending physician was not listed and because no summons was served on "John Doe" or the operator of the train within the applicable two-year period of limitation. Attached to the motion were copies of Dr. Sobel's records, showing that the only treatment rendered was for corn and callous removal beginning in August 1965, and continuing until January 1975. His last treatment before the occurrence in question (March 28, 1974) was on February 4, 1974, and the first treatment after the occurrence was on April 4, 1974, with subsequent treatments on September 19 and January 18, 1975, all of which were for "corn and callous removal." Also attached was a letter from Dr. Sobel which stated, "I treated her only as a Podiatrist and performed only 'corn & callous' removal at fees on charts. I did not order or have any X-rays or lab work done on her." Further, the CTA attached a copy of a Weiss Memorial Hospital record of plaintiff, showing that on May 3, 1974, she was admitted and treated for "cervical disc disease with neuropathy, essential hypertension and acute superficial thrombophlebitis." The doctors listed on the record were P. Saltzman, J. Hirschmann, and C. Clayman. The document did not, however, indicate that any of these conditions were the result of trauma nor was there any reference to the occurrence in question.

In response to the motion to dismiss, plaintiff's counsel filed an affidavit stating that prior to serving the statutory notice upon the CTA, plaintiff appeared at its office and gave a statement to its agent which included the names and addresses of Drs. Sobel, Saltzman, Hirschmann, and Clayman; that the CTA's answer to plaintiff's complaint did not allege that the notice was in any fashion defective; that he requested that the CTA supply the names and addresses of the motormen who passed the location in question at about the time of the alleged occurrence; that he was informed by CTA that no records were kept which would indicate this information; that he unsuccessfully attempted to investigate the matter and thereby ascertain the identity of the motorman; that on

numerous occasions he was told the CTA did not have such information; that on May 12, 1977, he received a letter stating that "CTA has no report of the alleged occurrence, therefore, the name of the operator is unknown"; and that by filing its motion to dismiss just 14 days prior to the scheduled date of trial, the CTA "lulled the plaintiff into a sense of security in regard to the notice * * *."

During the course of argument in the trial court on the motion, plaintiff contended that the CTA had actual notice of Drs. Clayman, Saltzman, and Hirschmann's roles as attending physicians through plaintiff's oral statement allegedly to CTA shortly after the occurrence in question, and that the corns which Dr. Sobel treated could have been aggravated by the occurrence. She further argued that although the CTA knew she considered it to be the viable defendant, it avoided challenging the listing of Dr. Sobel as the attending physician while at the same time withheld the name of the motorman until such time as the limitations period applicable to him had lapsed and thereby lulled her into a false sense of security in that she otherwise would have conducted a more intensified search for his identity. To the contrary, the CTA contended that it was unable to ascertain the accuracy of plaintiff's notice until she answered its interrogatories, which were served on her in April 1975, but not answered until August 1977; and that, in any event, the information supplied by plaintiff was too scant to enable it to ascertain the identity of the motorman. After noting the failure of plaintiff to timely initiate discovery procedures to learn the motorman's identity, the trial court dismissed the complaint as to both defendants.

OPINION

■■■■ Plaintiff first contends the dismissal as to CTA was improper because her notice substantially complied with applicable statutory requirements. Under section 41 of the Metropolitan Transit Authority Act (the Act) (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 341), no action seeking damages for personal injury may be brought against the CTA unless a written notice is filed in accordance with its requirements, which includes among other essential elements, "the name and address of the attending physician, if any." As the wording of this section was taken almost verbatim from sections 8—102 and 8—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, pars. 8—102, 8—103), the case law concerning that section is applicable. Thus, a suit against the CTA is subject to dismissal where the required statutory notice completely omits an essential element (see *Zavala v. City of Chicago* (1977), 66 Ill. 2d 573, 363 N.E.2d 848), and a notice which incorrectly lists an essential element has been viewed as having entirely omitted it (*Thomas v. Chicago Transit Authority* (1975), 29 Ill. App. 3d

952, 331 N.E.2d 216; *Ouimette v. City of Chicago* (1909), 242 Ill. 501, 90 N.E. 300). Where some attempt to designate an element is apparent, the notice is deemed sufficient if the designation reasonably fulfills the requirements of the statute and does not mislead or prejudice the municipality. (*Bickel v. City of Chicago* (1975), 25 Ill. App. 3d 684, 323 N.E.2d 832.) Actual knowledge of the municipality or CTA, however, is not a consideration in this regard. *Bickel v. City of Chicago*; see also *Repaskey v. Chicago Transit Authority* (1975), 60 Ill. 2d 185, 326 N.E.2d 771; *Housewright v. City of LaHarpe* (1972), 51 Ill. 2d 357, 282 N.E.2d 437.

Generally, a physician who treats plaintiff for injuries which were allegedly the result of the incident in question is viewed as the attending physician. (*Quirk v. Schramm* (1948), 333 Ill. App. 293, 77 N.E.2d 417; *Maxey v. City of East St. Louis* (1910), 158 Ill. App. 627.) "Treatment has been defined as a broad term covering all the steps taken to effect a cure of injury or disease, including examination and diagnosis, as well as the application of remedies. [Citations.]" *Bickel v. City of Chicago* (1975), 25 Ill. App. 3d 684, 687, 323 N.E.2d 832, 835.

Here, the record discloses that for many years prior to the incident in question, Dr. Sobel (a podiatrist) had been removing corns and callouses from plaintiff's feet and continued to render the same treatment after the occurrence. According to his statement, he treated her only as a podiatrist and did not prescribe any X rays or laboratory analysis in so treating her. Plaintiff's present theory is that being thrown from her seat by the lurching of the CTA train aggravated a cancerous tumor located in her left axilla and breast. We do not see, nor has plaintiff pointed out, the relationship between the continual and unchanging procedure of Dr. Sobel in removing her corns and callouses over a number of years and the treatment of any injury she may have received in the occurrence in question.

On oral argument in this court, plaintiff admitted that an attending physician within the meaning of the statutory notice provision is one who treats an injury received in the occurrence for which damages are sought. This is also apparent from the language of section 41, which we believe intends that the person named in the notice as attending physician should be one who has treated for injuries received in the occurrence in question, and a notice containing the name of a doctor who has treated a plaintiff, but not for injuries so received, is defective.

In the light of the foregoing, we cannot say that the trial court erred in finding that the listing of Dr. Sobel failed to reasonably satisfy the requirements of disclosing the name of plaintiff's attending physicians. (*Thomas v. Chicago Transit Authority*; *Bickel v. City of Chicago*.) Moreover, we note that this result is not changed by any actual knowledge of the role played by Drs. Clayman, Hirschmann, and

Saltzman as treating physicians which may have resulted from plaintiff's alleged oral statement to one of CTA's employees. *Repaskey v. Chicago Transit Authority.*

Plaintiff, however, argues that even if Dr. Sobel was improperly listed as an attending physician, the notice's inclusion of Weiss Memorial as the treating hospital constituted substantial compliance in that the names and the business address of Drs. Clayman, Hirschmann, and Saltzman were ascertainable from the admission record pertaining to plaintiff. In this regard, she relies heavily upon *Musser v. City of Chicago* (1938), 293 Ill. App. 625, 12 N.E.2d 336 (abstract).

In *Musser*, several doctors treated plaintiff's broken arm during the first 24 days after her fall on a Chicago sidewalk, but thereafter and continuing until the time of trial, a different physician—Dr. Test—treated her injury. Because only Dr. Test was listed as the attending physician, the City of Chicago contended that the notice was defective in failing to divulge the names and addresses of those physicians who treated plaintiff's injuries during the first 24 days following the occurrence. Citing *McComb v. City of Chicago* (1914), 263 Ill. 510, 105 N.E.2d 294, this court found that the listing of Dr. Test, who commenced treatment of plaintiff's injuries just a month after the occurrence and who was her physician at the time notice was given, was in substantial compliance with statutory requirements. Ill. Rev. Stat. 1977, ch. 85, pars. 8—102, 8—103.

*McComb* dealt with the requirements that the written notice reveal the location of the occurrence. There, plaintiff's notice stated that he had fallen on the corner of 39th Street and Campbell Avenue but did not designate which of the intersection's four corners was the precise site of the fall. After noting that the terms of the notice requirement were not legislatively intended to be interposed as stumbling blocks or pitfalls to prevent recovery, the supreme court held that the designation of the place of injury which allows officials of common understanding and intelligence by the exercise of reasonable diligence and without further information from plaintiff to ascertain the exact location where the alleged injury was suffered is sufficient.

■■ We do not believe either *Musser* or *McComb* supports the position of plaintiff here. Despite the fact that he was one of several doctors involved, the designated physician in the *Musser* notice actually treated the plaintiff for trauma resulting from the occurrence. Here, however, the treatment rendered by Dr. Sobel before and after the occurrence was corn and callous removal and not for any injury resulting from her alleged fall on the train. Thus, we do not believe that the notice before us falls within the parameters of *Musser*. In *McComb*, there was no dispute concerning the fact that one of the four corners of the designated intersection was the place of the alleged occurrence. In the case at bar, however, even if we

held (which we decline to do) that the CTA was required to obtain plaintiff's Weiss Memorial admission record to ascertain the names of treating physicians, plaintiff's position would not be supported. This follows because the record itself gives no indication that plaintiff was treated for any injury resulting from the occurrence in question. To establish a relationship between treatment of a cervical disc disease, neuropathy, hypertension and/or thrombophlebitis and the occurrence, additional information beyond that contained in the record itself would have to be provided. The need for further information proscribes the application of the *McComb* rule.

For the reasons stated, we believe the record supports the trial court's finding that plaintiff failed to substantially comply with applicable statutory requirements and that her suit against the CTA was properly dismissed.

Plaintiff next contends that the CTA was estopped from calling the trial court's attention to her failure to serve the motorman with summons within the applicable limitations period and that therefore suit against the motorman was improperly dismissed. We disagree.

Supreme Court Rule 103(b) provides:

"If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice. In either case the dismissal may be made on the application of any defendant or on the court's own motion." Ill. Rev. Stat. 1977, ch. 110A, par. 103(b).

During the course of oral argument before this court, plaintiff admitted that the motorman was not served within the applicable two-year period; that within such period she could have (but did not) employ discovery procedures and sanctions to obtain a list of motormen who passed the last northbound turn before the Kimball station at about the time in question, from which information she could have learned the identity of the motorman involved and made timely service of summons. Despite these admissions, plaintiff seeks to avoid application of Rule 103(b) by relying upon the estoppel principles enunciated in *Hinz v. Chicago Transit Authority* (1971), 133 Ill. App. 2d 642, 273 N.E.2d 427.

In *Hinz,* at a pretrial conference, the trial court noted plaintiff's failure to plead and prove a timely statutory notice. In response, plaintiff produced a notice which on its face purported to be timely filed, and the CTA did not object to the informal production. Then, after judgment had been entered against it, the CTA for the first time by way of a post-trial

motion raised the failure to plead and prove compliance with statutory notice requirements. The trial court granted judgment *n.o.v.* in favor of the CTA. This court vacated this judgment, reasoning that:

> "A sense of justice prevents us from allowing defendant to lull plaintiff into this false sense of security only later to find that the real theory of defendant's case was to allow plaintiff to reach a point of no return [*i.e.*, it would be futile to attempt to amend the complaint to include the allegation of timely notice at a point in time when the proofs were closed and the notice itself could not be admitted into evidence] and then discover all was for naught." 133 Ill. App. 2d 642, 646, 273 N.E.2d 427, 430.

In the instant case, however, reliance upon *Hinz* is misplaced, as the record reveals no evidence of a lulling by the CTA. In July 1977, three years and three months after the occurrence, plaintiff for the first time, in a motion to advance her case for trial, revealed her theory that a cancerous tumor located in her left axilla and breast was aggravated as a result of the occurrence and that her treating physician was Dr. Clayman. Shortly thereafter, in answer to interrogatories which had been served upon her two years earlier, plaintiff stated that she suffered "[m]ultiple injuries and right leg [*sic*]" and that 10 physicians including Drs. Sobel, Clayman, Hirschmann, and Saltzman attended those injuries. Thus, it appears to have been in excess of one year after the limitations period applicable to the motorman had expired that CTA became aware that Dr. Sobel did not treat plaintiff for injuries received in the occurrence in dispute. Under the circumstances, we cannot say that the CTA forestalled moving for a dismissal of itself until such time as its motorman could no longer be served. Consequently, we do not believe that the CTA was estopped from obtaining the dismissal of the motorman. Moreover, the trial court was empowered under Rule 103(b) to dismiss on its own motion the unserved John Doe. Ill. Rev. Stat. 1977, ch. 110A, par. 103(b).

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.