RUBY DAVIS, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

First District (6th Division) No. 1—00—1985

Opinion filed December 14, 2001.

David A. Novoselsky and Leslie J. Rosen, both of Novoselsky Law Offices, of Chicago, for appellant.

Robert Rivkin, Thomas J. Bamonte, Ellen Partridge, and Laura Wunder, all of Chicago Transit Authority, of Chicago, for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Ruby Davis, filed a negligence complaint against defendant, Chicago Transit Authority (CTA), and its agent, Rouhy Clay, seeking damages for injuries she sustained while a passenger on a CTA bus. The trial court granted summary judgment in favor of the CTA pursuant to section 2—1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1005 (West 1998)) finding plaintiff had failed to comply with the notice requirements of section 41 of the Metropolitan Transit Authority Act (the Act) (70 ILCS 3605/41 (West 1998)). On appeal, plaintiff argues that CTA was not entitled to summary judgment because plaintiff substantially complied with the statutory require-ments and CTA was able to and did investigate the facts of the occur-rence immediately after it happened. For the reasons that follow, we affirm.

## I. STATEMENT OF FACTS

On May 20, 1994, plaintiff was a passenger on a bus that was owned and operated by the CTA and was being driven by defendant Rouhy Clay, a CTA employee. While traveling westbound on 103rd Street, the driver applied the brakes suddenly. Plaintiff was thrown sideways, toward the bus driver, and her head and shoulder struck either a pole, a seat, or another passenger.

The bus driver pulled over and told the passengers to sit still if they were hurt and that he was going to call the CTA. He then passed out CTA courtesy cards to those who were hurt and told those who were not that another bus would be coming.

Plaintiff filled out a courtesy card and returned it to the driver. The completed courtesy card provided the following information: plaintiff's name, address, and telephone number, employer's name, and employer's telephone number. Plaintiff also wrote the following remarks on the card: "Truck pull around in front of bus. I hit my

head and neck against another passenger and I can feel a pull in my left shoulder." The driver also received courtesy cards from four other passengers.

The CTA police arrived at the scene and shortly thereafter an ambulance arrived and took plaintiff to the emergency room at Little Company of Mary Hospital. Plaintiff was X-rayed and given medication for the pain in her head. The emergency room physician, Dr. Joseph, told plaintiff to see her own doctor for follow-up treatment.

On November 18, 1994, plaintiff submitted her notice of claim for personal injuries to CTA's secretary of the board and its general attorney. In this notice, plaintiff stated the following: (1) that the accident occurred on May 20, 1994, at about noontime; (2) that it occurred at 103rd and Ashland; and (3) that the name of her attending physician is Dr. Zanelli of the city industrial clinic.

On May 18, 1995, plaintiff filed suit against the CTA and the bus driver, Rouhy Clay. In her complaint, plaintiff identified the location of the occurrence as "103rd Street, at or near its inter-section with Ashland Avenue." On September 15, 1997, plaintiff voluntarily dismissed her complaint and refiled on August 7, 1998. In her refiled complaint, plaintiff identified the location of the occurrence as "on 103rd Street, at or near the intersections of Vincennes Avenue, Ashland Avenue and 103rd Street, in Chicago, Illinois."

On February 22, 2000, CTA moved for summary judgment based on plaintiff's failure to comply with the provisions of section 41 of the Act (70 ILCS 3605/41 (West 1998)). The motion identified three deficiencies with plaintiff's notice.

First, the motion observed that by identifying "103rd and Ashland," a nonexistent location, the notice sets forth the wrong location. Attached to the motion was a Chicago police department map of the area and an affidavit from William Platt, the general manager of the 103rd Street garage. Platt's affidavit averred that "Ashland Avenue does not intersect with 103rd Street." The map supports this statement. The map shows that 103rd Street intersects with Vincennes, but not with Ashland Avenue. Ashland Avenue terminates at about 96th Street. A diagonal street called South Beverly Avenue originates at that point.

Second, the motion observed that the notice sets forth the wrong time of the occurrence. The notice stated that the incident took place at "about noontime." In contrast, the complaint identified the time of the incident as "approximately 8:00 a.m." Likewise, in her deposition, plaintiff stated that the incident occurred at "about 7:55 a.m."

Finally, the motion observed that the notice fails to list the name and address of an attending physician. At her deposition, plaintiff

stated that she had received medical treatment right after the incident at Little Company of Mary Hospital. She indicated that she had been attended there in the emergency room by a Dr. Joseph. She was unsure whether Joseph was the doctor's first or last name. The notice contains no reference to Little Company of Mary Hospital or to any physician at that hospital. Instead, the notice identified plaintiff's attending physician as Dr. Zanelli at the city industrial clinic. In her deposition, plaintiff identified her treatment as a type of massage, administered by a therapist, to improve blood circulation. Plaintiff began seeing Dr. Zanelli in June 1994 and stopped when the doctor told her she could not figure out why plaintiff was experiencing pain.

In her response to CTA's motion for summary judgment, plaintiff did not argue that her notice complied with section 41. Rather, she argued that Dr. Zanelli was properly identified as plaintiff's treating physician and that the CTA is estopped from seeking dismissal by virtue of its "extensive" involvement in the litigation. Plaintiff conceded that the notice she filed identified the wrong time and a non-existent address.

Following briefing, the trial court granted summary judgment in favor of the CTA. On May 15, 2000, the court entered an order dismissing the cause of action based on plaintiff's failure to meet the requirements of section 41. Plaintiff now appeals.

## II. DISCUSSION

### A. Standard of Review

■ Our review of a trial court's grant of summary judgment is *de novo. Dunlap v. Alcuin Montessori School*, 298 Ill. App. 3d 329, 338 (1998). A summary judgment motion should be granted when " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986), quoting Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c) (now 735 ILCS 5/2—1005 (West 1998)). Summary judgment is a proper remedy where a claimant files a defective section 41 notice. *Yokley v. Chicago Transit Authority*, 307 Ill. App. 3d 132, 135-36 (1999).

### B. Propriety of Trial Court's Grant of Summary Judgment

Plaintiff argues that summary judgment was improperly granted in favor of the CTA because the CTA timely investigated the occurrence based on plaintiff's immediate notice of the injury via the courtesy card, the reports of other passengers and occurrence witnesses, and plaintiff's timely filed statutory notice.

■ At the time of plaintiff's accident, section 41 of the Act provided as follows:

"§ 41. No civil action shall be commenced in any court against the Authority by any person for any injury to his person unless it is commenced within one year from the date that the injury was received or the cause of action accrued. Within six (6) months from the date that such an injury was received or such cause of action accrued, any person who is about to commence any civil action in any court against the Authority for damages on account of any injury to his person shall file in the office of the secretary of the Board and also in the office of the General Counsel for the Authority either by himself, his agent, or attorney, a statement, in writing, signed by himself, his agent, or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, *the date and about the hour of the accident, the place or location where the accident occurred and the name and address of the attending physician, if any.* If the notice provided for by this section is not filed as provided, any such civil action commenced against the Authority shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing." (Emphasis added.) 70 ILCS 3605/41 (West 1996).

■ The purpose of section 41 of the Act was most recently stated in *Yokley v. Chicago Transit Authority*, 307 Ill. App. 3d 132, 136 (1999), as follows:

"The section 41 notice statute was enacted to allow the CTA to make a timely investigation into the facts surrounding an injury that might give rise to a claim against it and to permit prompt settlement of any meritorious claims. [Citations.] If the section 41 notice is filed in the proper form and within the statutory period, the CTA will be able to conduct an investigation while facts are accessible. [Citation.] Without timely and exact notice of an alleged accident, the CTA would be severely handicapped in its investigation. [Citation.]"

Applying the Act, this court has consistently required a claimant to "strictly comply" with section 41 by filing and properly serving, within six months of the alleged injury, a notice that completely and correctly sets forth all of the statutory information. See, *e.g., Yokley v. Chicago Transit Authority*, 307 Ill. App. 3d 132, 136-37 (1999), *appeal denied*, 185 Ill. 2d 670 (1999); *Dimeo v. Chicago Transit Authority*, 311 Ill. App. 3d 152, 155 (1999); *Bonner v. Chicago Transit Authority*, 249 Ill. App. 3d 210, 212 (1993); *Niziolek v. Chicago Transit Authority*, 251 Ill. App. 3d 537, 542 (1993). Under the applicable strict compliance standard, a proper section 41 notice "must contain each of the

required elements set forth in the statute and is insufficient if one or more of the essential elements is omitted." *Yokley*, 307 Ill. App. 3d at 137. Supplying incorrect information is the equivalent of supplying no information. See *Yokley*, 307 Ill. App. 3d at 137 ("[p]roviding a nonexistent location is tantamount to providing no location at all"); *Thomas v. Chicago Transit Authority*, 29 Ill. App. 3d 952, 955 (1975) ("[l]isting the wrong attending physician in the notice is tantamount to a complete omission of an essential element").

■ Here there can be no dispute, indeed plaintiff concedes, that her notice lists a nonexistent location. This court's recent decision in *Yokley* specifically determined that a notice that sets forth a nonexistent location fails to comply with section 41. Plaintiff's notice also set forth an incorrect time of occurrence. Although the time element of section 41 requires that a potential plaintiff state only "about" the hour of the accident (70 ILCS 3605/41 (West 1998)), it cannot be said that noon is "about" 8 a.m. Once again, because listing the wrong information is the same as listing no information, failure to list the correct time likewise requires dismissal. *Dimeo*, 311 Ill. App. 3d at 155.

Plaintiff also failed to provide the name of her attending physician. Indeed, plaintiff's notice does not even mention that she was treated at Little Company of Mary Hospital. Plaintiff correctly notes that in *Margolis v. Chicago Transit Authority*, 69 Ill. App. 3d 1028, 1033 (1979), our court described an attending physician as one "who treats plaintiff for injuries which were allegedly the result of the incident in question." However, plaintiff would like us to apply the Health Care Surrogate Act's definition, which identifies an "attending physician" as one who is "selected by or assigned to the patient" and who had "primary responsibility" for the patient's care and treatment. 755 ILCS 40/10 (West 1998). Plaintiff fails to explain why the definition found in the Health Care Surrogate Act would be relevant here. Plaintiff further fails to explain how the name and address of a doctor who may not have even treated plaintiff for injuries sustained in the accident would be relevant to and aid in the CTA's investigation of the accident and alleged injuries to a passenger. The listing of Dr. Zanelli fails to satisfy the requirements of disclosing the name of plaintiff's attending physician. See *Margolis*, 69 Ill. App. 3d at 1033.

Notwithstanding the foregoing, plaintiff argues that her failure to meet the applicable strict construction standard should be excused. She argues that this case is "different," that she "substantially complied" with section 41, and that despite her failure to strictly comply with section 41, the CTA had all the information it needed to thoroughly investigate her claim. This court has repeatedly rejected similar arguments regarding substantial compliance. See, *e.g.*, *Dimeo*,

311 Ill. App. 3d at 154-55 (dismissal required where "time" element omitted despite plaintiff's claim that the "defect in her notice is so minimal that it should be disregarded in order to ensure a just result"); *Niziolek*, 251 Ill. App. 3d at 541 (dismissal required despite plaintiff's arguments that "a strict interpretation of section 41 would result in absurd and unjust consequences" and that the mistake in service did not harm or prejudice the CTA); *Sanders v. Chicago Transit Authority*, 220 Ill. App. 3d 505, 507 (1991) (dismissal required where secretary not served despite plaintiff's argument that "a strict construction of the Act would be inequitable"). In addition, we have likewise rejected similar arguments regarding the CTA's claimed ability to investigate or its actual knowledge. See *Margolis*, 69 Ill. App. 3d at 1031-32; *Repaskey v. Chicago Transit Authority*, 60 Ill. 2d 185, 187-88 (1975). "[I]t is solely the plaintiff's burden to comply with the section 41 notice requirements." *Dimeo*, 311 Ill. App. 3d at 155, citing *Streeter v. Chicago Transit Authority*, 272 Ill. App. 3d 921, 924 (1995).

In conclusion, we find that the result here is clear. Section 41 of the Act mandates dismissal of a complaint where a claimant files a defective statutory notice. Plaintiff filed an admittedly defective notice and the trial court properly granted summary judgment in the CTA's favor.

## III. CONCLUSION

Based on the above, we hereby affirm the trial court's order granting summary judgment in favor of the CTA.

Affirmed.

GALLAGHER, P.J., and O'MARA FROSSARD, J., concur.