JANET M. SEARCY, Plaintiff-Appellant, v. THE CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (1st Division)   No. 85—3462

Opinion filed August 18, 1986.

Michael J. Goldstein, of Chicago, for appellant.

Joyce A. Hughes, of Chicago Transit Authority, and William ·G. Clark, Jr., & Associates, Ltd., both of Chicago (William G. Clark, Jr., and Ilene Davidson Johnson, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Janet M. Searcy, appeals from the order of the circuit court of Cook County dismissing her personal injury action against defendant, the Chicago Transit Authority (CTA), for failure to file her lawsuit within one year of the date of the accident, as required by section 41 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1983, ch. 111⅔, par. 341). Plaintiff contends that the CTA was estopped from relying upon section 41 to bar her action. We reverse and remand.

On June 17, 1983, plaintiff allegedly sustained personal injuries while exiting from a CTA elevated-train station at the intersection of Wabash Avenue and Adams Street. Because of her injuries plaintiff was unable to resume her employment as an airline reservation clerk. Although plaintiff filed a timely written notice of claim with the CTA, she did not file her lawsuit until December 3, 1984. The CTA thereaf-

ter moved to dismiss the action because it had not been brought "within one year from the date that the injury was received or the cause of action accrued." (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 341.) In response plaintiff argued that by virtue of the conduct of its claims adjuster, the CTA was estopped from raising section 41 as a defense to her action.

In an affidavit plaintiff stated that she promptly reported the accident to the CTA and spoke with a claims adjuster who identified himself as D. O'Sullivan. O'Sullivan instructed plaintiff to keep a record of all of her medical expenses and informed her that he would send wage-loss verification forms to her employer so the CTA could pay all of plaintiff's medical expenses, even if she had medical insurance coverage, and reimburse her for lost wages. He also told her that she would receive a follow-up letter from him. O'Sullivan further advised plaintiff that liability would depend upon the outcome of his investigation, but he assured her that settlement of claims such as hers did not pose any problems and his investigation was merely a formality which should not concern her.

Approximately one week after the accident plaintiff received a letter from O'Sullivan requesting her to complete and return an accident report. Plaintiff immediately complied with this request. One month later plaintiff told O'Sullivan that her condition had not improved and that she had been unable to resume her employment. O'Sullivan informed plaintiff that her case was "on file" and that the CTA would wait until the full extent of her injuries had been determined. Her claim would be settled then "without any problems." O'Sullivan explained that the settlement would depend primarily on the nature and extent of the injuries. When plaintiff asked O'Sullivan if she should retain an attorney, he advised her that an attorney was not necessary because cases similar to plaintiff's were settled by the CTA all the time. O'Sullivan again assured plaintiff that she would be reimbursed for all of her medical expenses and lost wages.

Plaintiff also asked O'Sullivan what would happen if she were not able to return to work for an extended period of time. O'Sullivan instructed plaintiff to apprise him of her condition prior to the expiration of six months from the date of the accident so that he could send "an extension" form to her to continue the claim. If plaintiff's disability lasted longer than six months, the CTA would continue the matter for as long as one year from the date of the accident at the end of which time the CTA would settle the matter regardless of the duration of plaintiff's injuries. This telephone conversation concluded with O'Sullivan asking plaintiff to notify him if her condition changed. Oth-

erwise, he would contact her before the expiration of the six-month period.

Plaintiff discussed her medical condition with O'Sullivan on a regular basis during the following months, and she maintained a record of her medical treatment and expenses. Early in December 1983 plaintiff informed O'Sullivan that she had not been released by her physician. At O'Sullivan's direction, plaintiff completed and submitted the notice-of-claim form required by statute. (Ill. Rev. Stat. 1985, ch. 111⅔, par. 341.) Plaintiff spoke with O'Sullivan about her condition on a monthly basis through April 1984.

Toward the end of May 1984 plaintiff telephoned O'Sullivan and advised him that she remained under her physician's care and that her injury was not improving. She expressed concern that the one-year anniversary date of the accident was approaching and asked him what she should do. O'Sullivan instructed plaintiff to send her records to him which he would present to the CTA board for settlement. As in previous conversations O'Sullivan assured plaintiff that there would be no difficulty about settlement of her claim.

Plaintiff sent the records O'Sullivan had requested. She then telephoned O'Sullivan and again expressed her concern that the one-year period would expire in a few days. O'Sullivan told her not to worry because he had received the documents prior to the expiration date and the matter "was now in our hands."

The anniversary date of plaintiff's accident was June 17, 1984, a Sunday. On Tuesday, June 19, 1984, O'Sullivan telephoned plaintiff and informed her that on Monday, June 18, 1984, the CTA board had denied her claim on the basis of no liability. A letter confirming the board's action was sent to plaintiff on June 20, 1984.

In the final paragraph of her affidavit plaintiff stated that she had relied upon the statements and representations that O'Sullivan had made to her; that as a result of his assurances that the CTA would pay for her losses and that she did not need an attorney to protect her interests, she neither retained an attorney nor sought any advice on how she could maintain her claim after the one-year period had expired. Plaintiff averred that she did not know that filing an action within one year of the date of the accident would have preserved her claim against the CTA.

The CTA did not file any counteraffidavits but merely asserted that it could not be estopped by the acts of its claims adjuster. The trial court granted the motion to dismiss. This appeal follows.

Plaintiff, as we have noted, contends that the CTA was estopped from relying upon section 41 of the Metropolitan Transit Authority

Act to bar her action. We agree.

■ Section 41, which established the Chicago Transit Authority, provides in relevant part that "[n]o civil action shall be commenced in any Court against the Authority by any person for any injury to his person unless it is commenced within one year from the date that the injury was received or the cause of action accrued." (Ill. Rev. Stat. 1983, ch. 111⅔, par. 341.) The filing requirement is not a condition precedent to the right to bring suit, but is a limitation provision which can be waived. (*Muscare v. Voltz* (1982), 107 Ill. App. 3d 841, 843, 438 N.E.2d 620.) Where appropriate, the CTA may be estopped from raising the statute of limitations as a defense. *Serafini v. Chicago Transit Authority* (1979), 74 Ill. App. 3d 738, 741-42, 393 N.E.2d 1120 (by implication).[1]

■ Equitable estoppel arises through a party's voluntary conduct whereby he is precluded from asserting his rights against another who in good faith relied on such conduct and was thereby led to change his position to his detriment. (*Phillips v. Elrod* (1985), 135 Ill. App. 3d 70, 74-75, 478 N.E.2d 1078.) The doctrine of equitable estoppel has been applied against local governmental entities. (See *Kievman v. Edward Hospital* (1985), 135 Ill. App. 3d 442, 481 N.E.2d 909, and the cases cited therein.) In our judgment the facts alleged in plaintiff's affidavit, which the CTA did not contest for purposes of its motion to dismiss, adequately raised the defense of estoppel.

According to that affidavit, the CTA's claim adjuster repeatedly assured plaintiff that her claim would be settled and that she would be fully reimbursed for her medical expenses and lost wages. O'Sullivan described his investigation into the accident as a "formality" and discouraged plaintiff from consulting with an attorney. When plaintiff expressed concern that the one-year anniversary date of the accident was approaching, O'Sullivan again assured her that there

---

[1]In *Repaskey v. Chicago Transit Authority* (1973), 9 Ill. App. 3d 897, 293 N.E.2d 440, *aff'd* (1975), 60 Ill. 2d 185, 326 N.E.2d 771, the appellate court held that the CTA could not be estopped from asserting the six-month notice-of-claim provision of section 41. The court interpreted the notice requirement as a condition precedent to the right to bring suit which could not be waived. (9 Ill. App. 3d 897, 901-02, 293 N.E.2d 440.) Subsequent supreme court decisions, however, have construed a similar notice requirement in the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 8—102) as a limitation provision which can be waived by the local governmental entity. (See *Dunbar v. Reiser* (1976), 64 Ill. 2d 230, 233-36, 356 N.E.2d 89, and the cases cited therein.) In light of these decisions, it is clear that the appellate court's opinion in *Repaskey* no longer accurately reflects the present state of the law. See *Muscare v. Voltz* (1982), 107 Ill. App. 3d 841, 843, 438 N.E.2d 620; *Dunbar v. Reiser* (1975), 26 Ill. App. 3d 708, 325 N.E.2d 440, *aff'd* (1976), 64 Ill. 2d 230, 356 N.E.2d 89.

would be no problem regarding a settlement and that the matter "was now in our hands."

In our opinion, it is at least arguable that the conduct and representations of the CTA's claim adjuster in this case lulled plaintiff into a false sense of security that her claim for damages would be settled regardless of the limitation period. Such conduct may work an estoppel. (*Dunbar v. Reiser* (1975), 26 Ill. App. 3d 708, 711-12, 325 N.E.2d 440, aff'd (1976), 64 Ill. 2d 230, 356 N.E.2d 89; *Hinz v. Chicago Transit Authority* (1971), 133 Ill. App. 2d 642, 646, 273 N.E.2d 427. See generally *Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1142-43, 419 N.E.2d 465; *Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 682-83, 406 N.E.2d 90.) Plaintiff reasonably may have relied upon O'Sullivan's conduct and representations to her detriment. Under these circumstances, it was improper for the court to dispose of the issue of estoppel as a matter of law. (*D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 838-39, 347 N.E.2d 463.) Plaintiff's estoppel argument presented a question of fact for determination by the trier of fact. Accordingly, we reverse the trial court's order dismissing plaintiff's complaint and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

CAMPBELL and BUCKLEY, JJ., concur.