ANITA POTHIER, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHOR-ITY, Defendant-Appellee.

First District (1st Division)   No. 1—91—2248

Opinion filed November 23, 1992.

Adler, Gale & Rooth, of Chicago (Valerie Harris Adler, of counsel), for appellant.

Querrey & Harrow, Ltd. (Michael Resis, Ellen L. Karecki, and G.A. Finch, of counsel), and William H. Farley, Jr., of Chicago Transit Authority, both of Chicago, for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Anita Pothier (plaintiff) brought a personal injury action against the Chicago Transit Authority (CTA) to recover damages for injuries she allegedly sustained as she alighted from a CTA bus. The trial court granted the CTA's motion to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) on the ground that plaintiff's claim was barred because she failed to give proper written notice within six months of the accident as required by section 41 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 341). On appeal, plaintiff contends that the affidavit attached to her response to the CTA's motion to dismiss raises a material question of fact as to whether the CTA claim adjuster's prelitigation conduct estopped the CTA from asserting plaintiff's failure to comply with the notice requirement as a bar to her cause of action, thereby precluding dismissal of her complaint. We reverse and remand.

On June 22, 1990, plaintiff filed a one-count complaint against the CTA to recover for her injuries. Plaintiff alleged that on September 12, 1989, as she exited a CTA bus at or near the intersection of Racine and Taylor, the bus prematurely pulled away from the curb while she was still on the steps causing her to fall and sustain permanent injuries. Plaintiff concedes that she did not give written notice of her claim to the secretary of the board and to the CTA's general counsel within six months of the incident as required by section 41. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 341.) Plaintiff argues, however, that the CTA is equitably estopped from asserting the six-month notice requirement to bar her claim and that her uncontradicted affidavit at least raises a material question of fact on this issue.

In her affidavit, plaintiff stated that shortly after her injury she was contacted by Omar Colan, a CTA representative, who informed her that he would send her all the forms she would need in order to

file a claim against the CTA. On December 5, 1989, plaintiff received a letter from Colan telling her that all she needed to do was to send him her medical reports and bills. On January 16, 1990, plaintiff again received a letter from Colan, this one asking her to contact him. According to plaintiff's affidavit, shortly after receiving the letter she contacted Colan and he informed her that "everything was going o.k. with [her] claim" and that all he needed were "the medical authorizations in order to get medical records so that they could make an offer to me." Plaintiff further stated that she had several other telephone conversations with Colan during which time she informed him of the "date, time and bus in which [she] was injured as well as all of the names and addresses of the hospitals and doctors which [she] had seen related to [her] injuries." She asserted that he never told her that she had to send written notice of the accident. She swore that Colan "assured [her] that [she] did not need a lawyer" and that her claim would be settled shortly because he had or would soon receive all the necessary information and documents. Upon the expiration of six months, Colan informed plaintiff that the CTA would be denying her claim because she failed to file the statutorily required written notice. In her affidavit, plaintiff asserted that, in reliance upon Colan's assurances that he had all the necessary information and that her claim would be settled shortly, she did not file notice of her claim nor did she contact an attorney in order to discover her legal rights. The CTA did not file any counteraffidavits nor even reply to plaintiff's response to its motion to dismiss. On April 26, 1991, the trial court heard oral argument on the motion. On June 7, 1991, the trial court dismissed plaintiff's complaint with prejudice and without specific written findings. Plaintiff appeals.

■ The sole issue on appeal is whether plaintiff's uncontradicted affidavit establishes a material question of fact as to whether the CTA is estopped from moving to bar plaintiff's claim on the ground that plaintiff failed to comply with the notice requirement of section 41 of the Metropolitan Transportation Act (Act). If a plaintiff files an affidavit in response to a motion to dismiss alleging facts to support the defense of estoppel and the defendant fails to file a counteraffidavit, the court must accept the facts in plaintiff's affidavit as true and determine whether a material question of fact has been raised on the issue of estoppel. (*D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 838-39, 347 N.E.2d 463, 465-66; *Suing v. Catton* (1970), 118 Ill. App. 2d 468, 470, 254 N.E.2d 806, 808.) A question of fact is raised by an uncontradicted affidavit "if reasonable minds might differ as to inferences to be drawn from undisputed evidence." (*Pantle v. Industrial*

*Comm'n* (1975), 61 Ill. 2d 365, 369, 335 N.E.2d 491, 494.) If a genuine question of fact is raised on the defense of estoppel and the plaintiff has requested a jury trial, the court must deny the defense motion to dismiss. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—619(c).) If no question of fact is raised by the plaintiff's affidavit, however, the court may properly dispose of her complaint as a matter of law. *Udstuen v. Patterson* (1990), 198 Ill. App. 3d 67, 69, 555 N.E.2d 750, 751; *D'Urso*, 37 Ill. App. 3d at 839, 347 N.E.2d at 466.

■ Section 41 sets forth a one-year statute of limitations on any civil action against the transportation authority and also requires any person who is about to commence a personal injury action against the authority to file written notice "[w]ithin six (6) months from the date that such an injury was received or such cause of action accrued *** in the office of the secretary of the Board and also in the office of the General Attorney for the Authority." (See Ill. Rev. Stat. 1989, ch. 111²/₃, par. 341.) The Act further provides that failure to give the statutorily required notice is fatal and that any personal injury action commenced against the authority "shall be dismissed and the person to whom any such cause of action accrued *** shall be forever barred from further suing." (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 341.) This court has recently held that the requirements of section 41 are mandatory and that the burden of strict compliance rests upon the plaintiff. *Sanders v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 505, 507, 581 N.E.2d 211, 213.

■ Under the doctrine of equitable estoppel, however, the CTA may be precluded from asserting that plaintiff's failure to comply with the section 41 requirements bars her claim. (See *Searcy v. Chicago Transit Authority* (1986), 146 Ill. App. 3d 779, 497 N.E.2d 410.) In order to establish equitable estoppel, the plaintiff must show that he was led to detrimentally rely upon the conduct or statements of the defendant and that such reliance was in good faith. (*Searcy*, 146 Ill. App. 3d at 783, 497 N.E.2d at 412-13.) Specifically, if there is evidence of conduct in the record "which induces plaintiff to reasonably believe his claim will be settled without suit or lulls plaintiff into a false sense of security which causes him to delay the assertion of his rights" a question of fact exists as to whether the defense of estoppel is available to the plaintiff. (*Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1143, 419 N.E.2d 465, 468.) Under the facts of this case, we hold that plaintiff's uncontradicted affidavit raised a question for the trier of fact on whether the CTA is estopped from raising plaintiff's failure to file the statutorily required notice to bar her claim.

In this case, plaintiff filed her claim within the one-year statute of limitations period, but concedes that she failed to give the statutorily required notice. Relying upon this court's decision in *Searcy v. Chicago Transit Authority* (1986), 146 Ill. App. 3d 779, 497 N.E.2d 410, the plaintiff asserts that her uncontradicted affidavit adequately raised the defense of equitable estoppel. The *Searcy* court held that the prelitigation conduct of a CTA claim adjuster could estop the CTA from relying upon the requirements of section 41. In *Searcy*, the plaintiff was injured while exiting a CTA elevated train. The CTA filed a motion to dismiss because the action had not been filed within the one-year limitations period. Plaintiff argued that the prelitigation conduct of the CTA's claim adjuster estopped the CTA from raising his noncompliance with section 41 as a defense.

In an uncontradicted affidavit which she attached to her response to the CTA's motion to dismiss, the *Searcy* plaintiff asserted that the claim adjuster informed her that the CTA would pay "all of plaintiff's medical expenses *** and reimburse her for lost wages." (146 Ill. App. 3d at 781.) The adjuster also assured her that his investigation was just a "formality" and that settlements of claims such as hers were routine. According to Searcy's affidavit, she filed an accident report with the CTA at the adjuster's request and was told that her claim would be settled "without any problems" as soon as the full extent of her injuries was determined. The adjuster advised her that she did not need an attorney and that her settlement "would depend primarily on the nature and extent of the injuries." (146 Ill. App. 3d at 781.) Plaintiff Searcy discussed her medical condition with the adjuster regularly and just prior to the expiration of six months the adjuster helped her complete the statutorily required notice of claim form which the adjuster called "an extension" form. He informed Searcy that if her injuries lasted for an extended period, "the CTA would continue the matter for as long as one year from the date of the accident at the end of which time the CTA would settle the matter regardless of the duration of plaintiff's injuries." (146 Ill. App. 3d at 781.) As the one-year date approached, plaintiff expressed concern and asked the adjuster what she should do. According to her affidavit, he told her not to worry because he had received all the necessary documents and there would be no problem settling her claim. Plaintiff concluded her affidavit by swearing that she had relied upon the adjuster's assurances that she did not need an attorney because the CTA would pay for her losses and that as a result she did not retain an attorney or seek any advice on how to maintain her claim. She stated she did not know that simply filing an action within the one-year per-

iod would have preserved her claim. The day after the one-year limitation period expired, the CTA board denied her claim on the basis of no liability. In reversing and remanding, the *Searcy* court concluded that

> "it is at least arguable that the conduct and representations of the CTA's claims adjuster in this case lulled plaintiff into a false sense of security that her claim for damages would be settled regardless of the limitation period. Such conduct may work an estoppel. [Citations.] Plaintiff reasonably may have relied upon [the CTA claims adjuster's] conduct and representations to her detriment. Under these circumstances, it was improper for the court to dispose of the issue of estoppel as a matter of law. (*D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 838-39, 347 N.E.2d 463.) Plaintiff's estoppel argument presented a question of fact for determination by the trier of fact." *Searcy*, 146 Ill. App. 3d at 784, 497 N.E.2d at 413.

The CTA, in the instant case, on the other hand, argues that plaintiff's affidavit is insufficient as a matter of law to create an issue of fact as to whether the CTA is estopped from asserting the notice requirement as a bar to plaintiff's claim. First, the CTA asserts that *Searcy* is distinguishable on its facts because plaintiff Searcy was aware of the limitations period and was led to believe her claim would be settled "regardless of the limitation period" while plaintiff in the instant case was not aware of the statute. Therefore, according to the CTA's reasoning, plaintiff could not have been misled by the CTA's conduct.

The CTA's argument, however, is based upon the false premise that a plaintiff must be aware of the statute of limitations period before being able to assert estoppel. Estoppel also extends to conduct which is intended to "prevent a claimant from ascertaining legal rights and obligations" (*Murphy v. Chicago Transit Authority* (1989), 191 Ill. App. 3d 918, 923, 548 N.E.2d 403, 406) or which " 'induces plaintiff to a reasonable belief that his claim will be settled without suit.' " (*D'Urso*, 37 Ill. App. 3d at 838, 347 N.E.2d at 465, quoting *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 307, 194 N.E.2d 565, 567.) The CTA's disingenuous reasoning would allow it to lull injured passengers into believing that making a claim is a routine matter and mislead them into not taking steps to ascertain their rights. The appellate court's statement in *Hinz v. Chicago Transit Authority* (1971), 133 Ill. App. 2d 642, 646, 273 N.E.2d 427, 430, in a slightly different context is equally applicable here, that justice must prevent us "from allowing defendant to lull plaintiff into this false sense of security

only later to find that the real theory of defendant's case was to allow plaintiff to reach a point of no return and then discover all was for naught." ·

The CTA also analogizes to four other cases which it asserts are more on point. The principle case the CTA relies upon is *Murphy v. Chicago Transit Authority* (1989), 191 Ill. App. 3d 918, 548 N.E.2d 403. In *Murphy*, the appellate court concluded that *Searcy* did not support the plaintiff's position and held that plaintiff's attorney's affidavit was insufficient to estop the CTA from asserting plaintiff's failure to give the statutorily required notice. The attorney argued that the CTA claim manager misled him and "lull[ed] him into a false sense that the claim had been accepted and would be settled." (191 Ill. App. 3d at 922.) He asserted in an affidavit that he sent the notice to the wrong party in reliance upon the CTA claim manager's instruction and later was assured "everything was okay and would be taken care of." (191 Ill. App. 3d at 922.) The court noted, however, that the claim manager never told plaintiff's attorney that he need not take all legally required steps to protect his client's claim. In the instant case, the CTA contends that the assertions allegedly made to plaintiff were analogous to the assertions made to the plaintiff's attorney in *Murphy* that "everything was okay and would be taken care of." (191 Ill. App. 3d at 922.) The CTA asserts that this court should conclude, as did the *Murphy* court, that these "vague statements" that everything was all right are not equivalent to admissions of liability or attempts to prevent the plaintiff from becoming aware of her legal rights and obligations. Therefore, the CTA concludes, these statements were insufficient as a matter of law to raise the estoppel defense.

The CTA also cites to this court's recent decision in *Sanders v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 505, 581 N.E.2d 211, in which we held that plaintiff's defective notice required dismissal of her complaint and that the conduct of the CTA was insufficient to create an estoppel. In *Sanders*, two months after plaintiff allegedly was hit by a CTA bus, plaintiff's attorney sent a certified letter to the CTA's general counsel but not to the secretary of the board as required by section 41. He also sent medical records and bills along with an authorization for the release of medical information to the claims department and was assured several times by a CTA claim adjuster that plaintiff's "settlement was proceeding." The *Sanders* court found the decision in *Searcy* distinguishable in that Ms. Sanders was represented by an attorney and it was not averred that any CTA representative told plaintiff's counsel that he need not comply with the requirements of section 41. Additionally, the court noted that the

alleged assurances made to plaintiff's attorney that the settlement was proceeding occurred after the expiration of the six-month notice period; therefore, these assurances could not have been relied upon to support a defense of estoppel.

The CTA also cites to *Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 419 N.E.2d 465, and *Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 406 N.E.2d 90. In both *Myers* and *Hurtt*, the appellate court held that the defendants were not estopped from asserting the statute of limitations as a defense and that no question of fact existed as to whether the conduct of defendant's insurer caused the plaintiff's delay in filing suit. The CTA cites *Myers* and *Hurtt* specifically for the proposition that conduct must go beyond mere investigation and negotiation before a defendant can be estopped from asserting a statute of limitations defense. (See *D'Urso*, 37 Ill. App. 3d at 839, 347 N.E.2d at 466.) The CTA asserts that, as in *Myers*, plaintiff did not allege that they had reached a definite agreement or discussed a specific amount of money. Therefore, the claim adjuster's conduct did not exceed mere negotiation and could not have lulled the plaintiff into a reasonable belief that her claim would be settled or that the CTA would not rely upon the section 41 notice requirement.

■ The facts of the instant case are more analogous to *Searcy* than to any of the four cases upon which defendant relies. We conclude, therefore, that plaintiff's uncontradicted affidavit raised a question of fact on the issue of estoppel. Although the statements and representations attributed to the CTA's claim adjuster by plaintiff's affidavit are not as clearly misleading as those in *Searcy*, they are considerably more deceptive than the mere "vague statements" that were made in *Murphy* and *Sanders*. Additionally, a main factor the *Murphy* and *Sanders* courts contemplated when concluding that the plaintiffs had not overcome their burden of strict compliance with section 41 was that in both cases the plaintiffs had the benefit of counsel, a fact noticeably absent in the instant case. Moreover, the CTA's assertion that plaintiff's lack of counsel is not significant because it does not change the fact that she must still comply with the statutory notice requirement is misleading. Although plaintiff must still comply with section 41, her lack of counsel necessitates that the court give closer scrutiny to the defendant's conduct.

In both *Murphy* and *Sanders*, the fact that plaintiffs were represented by counsel was a controlling factor in the courts' rejection of plaintiffs' estoppel argument. In addition, both courts stressed that plaintiffs' attorneys never were told not to comply with the section 41 requirements. Moreover, the *Murphy* court reasoned that in *Searcy*

"the *layman* claimant was actively misled *** [whereas] Murphy's *attorney* relied on vague representations that 'everything was okay' " and, in effect, should have known better. (Emphasis added.) (*Murphy,* 191 Ill. App. 3d at 923, 548 N.E.2d at 406.) The *Murphy* court stated that plaintiff's attorney would not have settled for vague assurances and would have protected his client's interests if he had checked the statute. (*Murphy,* 191 Ill. App. 3d at 923, 548 N.E.2d at 406.) In effect, an attorney is expected to research the law and protect his client's interests; representations which may be considered reasonable for a layman to rely upon may not be reasonable for an attorney. See also *Myers,* 94 Ill. App. 3d at 1144, 419 N.E.2d at 469 (lack of counsel is an important factor necessitating closer scrutiny of insurer's conduct); *Hurtt,* 84 Ill. App. 3d at 683, 406 N.E.2d at 92 ("The difference between an insurer and an individual without legal representation is not insignificant").

The CTA also asserts, contrary to common sense and authority, that it was not misleading to inform the plaintiff she did not need an attorney. In *Searcy,* this court considered the fact that plaintiff was discouraged from retaining an attorney to be a significant factor. Additionally, the *Murphy* court reiterated this key consideration when it stated that

> "*Searcy* demonstrates a pattern of deception in which the layman claimant was actively misled into believing that liability was admitted and her claim was being settled. She was expressly told that she did not need to obtain a lawyer." *Murphy,* 191 Ill. App. 3d at 923, 548 N.E.2d at 406.

The CTA also contends that the claim adjuster's conduct did not go beyond mere investigation and negotiation. Both cases the CTA cites on this point are distinguishable. In *Myers* (94 Ill. App. 3d at 1143, 419 N.E.2d at 469), the only representation upon which plaintiff could have relied was one statement by defendant's representative that he was attempting to settle the claim. In *Hurtt* (84 Ill. App. 3d at 682-83, 406 N.E.2d at 91-92), the defendant made no representations that plaintiff could have reasonably relied upon or interpreted as a concession of liability. The *Hurtt* defendant encouraged settlement, made several offers which plaintiff refused and expressly warned plaintiff of the statute of limitations. In the instant case, according to plaintiff's uncontradicted affidavit, the claim adjuster never told plaintiff he was merely investigating the claim to determine whether the CTA was liable, never made any offers of settlement which plaintiff refused, nor did he warn plaintiff of the section 41 requirements. In fact, his conduct and representations could have lulled a reasonable

layman into believing that his claim would shortly be settled. Clearly, the CTA claim adjuster's conduct went beyond investigation and negotiation. It is not mere investigation or negotiation for a CTA representative to tell a plaintiff that he would send her all the necessary forms she would need to make a claim or to inform her that all she needed to do was to send in her medical records and bills. Most importantly, it is not mere investigation or negotiation to advise a plaintiff against retaining an attorney.

A jury could conclude from the averments in plaintiff's affidavit that the claim adjuster's entire course of conduct was designed to give the impression that recovery was certain as soon as the extent of liability was determined and that plaintiff need not pursue any other avenues of relief. The claim adjuster's statements could be interpreted as conveying the clear impression that the question was not whether plaintiff would recover, but merely how much and when. A CTA claim adjuster may not have a duty to inform a claimant of the requirements of section 41 or to suggest she retain an attorney. However, if a claim adjuster advises a claimant that she need not consult an attorney, such advice in context with other representations should either raise a duty on the CTA's part to inform the claimant of the section 41 requirements or estop the CTA from asserting the claimant's noncompliance with them.

We conclude that the averments in plaintiff's affidavit were sufficient to raise the defense of estoppel and that it was error for the trial court to dismiss plaintiff's complaint. There is at least a question as to whether the CTA claim adjuster's conduct lulled the plaintiff into believing her claim would be settled irrespective of any limitations period. It is for the trier of fact to determine whether a layman claimant would have reasonably relied upon the statements and representations of the CTA's claim adjuster.

Accordingly, for the foregoing reasons, we reverse the trial court's order dismissing plaintiff's complaint and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

CAMPBELL and MANNING, JJ., concur.