SCOTT NIZIOLEK, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

First District (1st Division) No. 1—91—2368

Opinion filed April 12, 1993.

Thomas C. Sprague, of LaGrange, for appellant.

William Farley, of Chicago Transit Authority, and P. Scott Neville, Jr., both of Chicago, for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Scott Niziolek (plaintiff) brought a personal injury action against the Chicago Transit Authority (CTA) and Leroy Carter (Carter) to recover damages for injuries he allegedly sustained when his automobile was struck from behind by a CTA bus driven by Carter. The trial court granted the CTA's motion to dismiss (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992))) on the ground that plaintiff's claim was barred because he failed to give proper written notice to the secretary of the board and to the CTA's general counsel within six months of the accident as required by section 41 of the Metropolitan Transit Authority Act (the Transit Act) (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 341 (now 70 ILCS 3605/41 (West 1992))). On appeal, plaintiff contends: (1) that he "substantially complied" with the notice requirement through his communications and correspondence with a CTA claims representative and, therefore, satisfied section 41; (2) that the claims representative's conduct served as a waiver of section 41 and estopped the CTA from asserting plaintiff's noncompliance with the notice provision as a bar to his claim; and (3) that the legislative scheme requiring a plaintiff to give notice under section 41 of the Transit Act, but not requiring such notice under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (See Pub. Act 84—1431, eff. November 25, 1986 (repealing Ill. Rev. Stat. 1985, ch. 85, par. 8—102)) is unconstitutional and denies plaintiff the equal protection of the law. Finally, plaintiff asserts that, even if the case against the CTA is dismissed, the case against its employee, Carter, should not be dismissed. We affirm.

On December 28, 1990, plaintiff filed a one-count complaint against the CTA and its employee, Carter, to recover damages for his injuries. Plaintiff alleged that on April 12, 1990, at or near the intersection of 79th and Tripp, he was driving his car when a CTA bus driven by Carter struck the rear end of his automobile causing him to sustain permanent injuries. In lieu of answering plaintiff's complaint, the CTA filed a motion to dismiss (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992))) on the ground that plaintiff neglected to file the statutorily required notice of his intent to sue with the secretary of the board and the CTA's general counsel within six months of the incident. Ill. Rev. Stat. 1991, ch. 111²/₃, par. 341 (now 70 ILCS 3605/41 (West 1992)).

In plaintiff's response to defendant's motion to dismiss, plaintiff conceded that he did not give written notice of his claim within six months of the incident to both the secretary of the board and the CTA's general counsel as required by section 41. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 341 (now 70 ILCS 3605/41 (West 1992)).) In his response, plaintiff insisted that "substantial compliance" with section 41 was sufficient to satisfy the notice requirement and, as evidence of his substantial compliance, he itemized the extensive correspondence between his attorney and the CTA claims representative. He also argued that the CTA was estopped from asserting plaintiff's failure to give the statutorily required notice to bar his claim and that the CTA waived the requirements of section 41 by "participat[ing] in discovery in this cause and discuss[ing] settlement." Plaintiff attached the affidavit of his former attorney (affiant) to his response in order to show the conduct of the claims representative which plaintiff argues establishes waiver and estoppel.

In the affidavit, affiant stated that, when he first contacted the CTA claims representative on April 17, 1990, he was told "to address all correspondence for the CTA concerning this claim to him." Affiant asserts that on that same day, April 17, 1990, he promptly sent the claims representative the plaintiff's name and address, the date and location of the accident, and a description of the general nature and extent of plaintiff's injuries and property damage. On April 25, 1990, the claims representative sent a letter to affiant indicating that the file was "incomplete" in that it needed "[a] statement, medicals, [and] bills." This letter also advised affiant to forward "[a]ll bills, reports, and estimates *** to the attention of the undersigned." According to affiant, he responded by forwarding to the claims representative a "statement" by plaintiff setting forth his version of "the facts and circumstances of the accident as well as a description of his personal injuries and property damage." Additionally, affiant stated that, in response to a subsequent letter requesting that plaintiff complete wage and medical authorization forms, he sent the completed forms to the claims representative on August 3, 1990. Affiant asserts that between April 17, 1990, and November 19, 1990, he forwarded to the claims representative "all available information and documentation concerning [plaintiff's] claim."

Affiant contends that he "was led to believe that the CTA and Mr. Uhl [the claims representative] were actively investigating, receiving, and evaluating [plaintiff's] claim in a fair and equitable manner." He maintains that the claims representative never advised him that he needed to send a formal notice of claim in addition to all the docu-

ments and information he had already sent. He further stated that the CTA claims representative advised him during the week of August 27, 1990, that the only remaining item that he and the CTA needed in order to discuss settlement was a doctor's report. Affiant contends in his affidavit that the claims representative's actions indicated that the CTA did not doubt its liability, but that it recognized that the only question was the extent of plaintiff's damages. He argues that he was purposely misled into believing that "any formalities, beyond what had been done, had been complied with or were not being required or had been waived." The CTA did not file any counteraffidavits. On June 19, 1991, the trial court heard oral arguments on the motion and dismissed plaintiff's complaint with prejudice. Plaintiff appeals.

Plaintiff's first contention on appeal is that "substantial compliance" with section 41 of the Transit Act is sufficient to satisfy the notice requirement. Plaintiff points out that section 41 of the Transit Act is very similar to section 8—101 through section 8—103 of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, pars. 8—101 through 8—103 (now 745 ILCS 10/8—101 through 8—103 (West 1992))) and asserts that both Acts should be construed in the same manner. He argues that the Illinois courts have found substantial compliance with the Tort Immunity Act sufficient to satisfy its requirements and contends that this court should find substantial compliance with section 41 sufficient to satisfy the Transit Act's requirements. He maintains that he substantially complied with the section's requirements because he sent the CTA all the statutorily required information and the CTA was not harmed or prejudiced by the fact that the information was sent to the claims representative instead of to the secretary of the board and the CTA's general counsel as the provision requires. He argues that a strict interpretation of section 41 would result in absurd and unjust consequences and would allow the CTA to avoid liability for its conduct simply because plaintiff failed to comply with a technical requirement. The CTA, on the other hand, asserts that Illinois case law requires that plaintiff strictly comply with the requirements of section 41. The CTA maintains that plaintiff's cause of action was properly dismissed because he did not give the statutorily required notice within six months of the accident.

■ Section 41 of the Transit Act requires that a plaintiff file notice within six months of an accident "in the office of the secretary of the Board and also in the office of the General Counsel for the Authority." (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 341 (now 70 ILCS 3605/ 41 (West 1992)).) If notice is not filed as required, section 41 provides that "any such civil action commenced against the Authority shall be

dismissed." (Ill. Rev. Stat. 1991, ch. 111⅔, par. 341 (now 70 ILCS 3605/41 (West 1992)).) When the word "shall" is included in a legislative provision, Illinois courts generally have held that the requirement is mandatory. (*People v. Williams* (1991), 143 Ill. 2d 477, 484, 577 N.E.2d 762, 765; *Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 96, 566 N.E.2d 1283, 1301; *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 499, 524 N.E.2d 561, 578; *Di Falco v. Board of Trustees* (1988), 122 Ill. 2d 22, 28, 521 N.E.2d 923, 926.) This court has held, therefore, that the plaintiff has the burden of strictly complying with the requirements of section 41. *Sanders v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 505, 507, 581 N.E.2d 211, 213.

In *Sanders* (220 Ill. App. 3d at 507, 581 N.E.2d at 213), plaintiff gave notice to the CTA's general counsel, but not to the secretary of the board. We concluded that this notice was not in strict compliance with section 41 and affirmed the dismissal of plaintiff's complaint. (*Sanders*, 220 Ill. App. 3d at 508-09, 581 N.E.2d at 214.) In *Murphy v. Chicago Transit Authority* (1989), 191 Ill. App. 3d 918, 921, 548 N.E.2d 403, 405, the court found that the notice requirement was not satisfied by sending a letter to a CTA claims manager rather than to the persons required by statute. Consequently, under the facts of this case, we find that plaintiff did not satisfactorily comply with the notice requirement by sending notice to a claims representative and not to both the secretary of the board and the CTA's general counsel.

Even assuming we found plaintiff's analogy to the Tort Immunity Act to be persuasive, plaintiff would not prevail. In *Bickel v. Chicago* (1975), 25 Ill. App. 3d 684, 323 N.E.2d 832, the standard for determining substantial compliance with the notice requirement of section 8—102 of the Tort Immunity Act was set forth. The *Bickel* court stated:

> "The statute is strictly construed to require that the written notice must contain each of the essential elements therein set forth. *A notice which completely omits one or more of the essential elements is insufficient.* On the other hand, the statute is to be liberally construed with respect to the sufficiency of the elements as set forth in the written notice. Where the particular element as set forth is reasonably sufficient to fulfill the requirements of the statute and where the public entity has not been misled or prejudiced thereby, the notice itself is sufficient." (Emphasis added.) (*Bickel*, 25 Ill. App. 3d at 692, 323 N.E.2d at 837-38.)

In *Repaskey v. Chicago Transit Authority* (1975), 60 Ill. 2d 185, 188, 326 N.E.2d 771, 773, the Illinois Supreme Court reiterated the established proposition that actual notice to the city is insufficient to satisfy the statutory notice requirements. (See *Housewright v. LaHarpe* (1972), 51 Ill. 2d 357, 361, 282 N.E.2d 437, 440; *Shortt v. City of Chicago* (1987), 160 Ill. App. 3d 933, 935, 514 N.E.2d 3, 4.) In view of *Bickel* and *Repaskey*, the court in *Shortt* concluded that notice sent to the corporation counsel's office instead of to the city clerk as required by the Tort Immunity Act was fatal to plaintiff's claim. (*Shortt*, 160 Ill. App. 3d at 935, 514 N.E.2d at 4-5.) The *Shortt* court determined that such notice was not substantial compliance, but, in fact, a complete omission of one of the statute's essential elements. *Shortt*, 160 Ill. App. 3d at 935, 514 N.E.2d at 4-5.

Several cases which we are aware of have held substantial compliance with the section's "informational" requirements sufficient as long as the public entity was not prejudiced or misled. (*Rio v. Edward Hospital* (1984), 104 Ill. 2d 354, 366-67, 472 N.E.2d 421, 426 (absence of address in notice not fatal to plaintiff's case where defendant was aware of the name and address of plaintiff's attorney and not prejudiced or misled); *Reese v. Village of Arlington Heights* (1990), 204 Ill. App. 3d 129, 134, 561 N.E.2d 1156, 1160 (incorrect date in notice not fatal); *Stewart v. County of Cook* (1989), 192 Ill. App. 3d 848, 854-55, 549 N.E.2d 674, 678 (incorrect date in notice not fatal).) In *Thomas v. Davenport* (1990), 196 Ill. App. 3d 1042, 1045, 554 N.E.2d 604, 606, the court interpreted the six-month notice provision as requiring notice within six months of discovery of an injury. Several courts have held that failure to file notice within six months is excused if the complaint is filed within the six-month period. (*Dunbar v. Reiser* (1976), 64 Ill. 2d 230, 237, 356 N.E.2d 89, 92; *Saragusa v. City of Chicago* (1976), 63 Ill. 2d 288, 292-93, 348 N.E.2d 176, 180.) In *Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 343, 270 N.E.2d 415, 417, the court held that a provision requiring that written notice be personally served in the office of the secretary or the clerk was satisfied where notice was sent to a proper party by registered mail return receipt requested. Finally, in *Lyons v. Chicago Transit Authority* (1953), 349 Ill. App. 437, 443, 111 N.E.2d 177, 179, the court held that properly filed notice under section 41 which contained the incorrect address of plaintiff's doctor was not fatal since defendant was not prejudiced. We are aware of no cases, however, which have held that substantial compliance, or even total compliance, with either the Tort Immunity Act or the Transit Act's informational requirements can be sufficient to

excuse a complete failure to give notice to the proper parties and within the required time period.

■ Plaintiff's second contention is that his uncontradicted affidavit establishes a material question of fact as to whether the CTA is estopped from moving to bar his claim on the ground that he failed to comply with the notice requirement of section 41 of the Transit Act. Plaintiff argues that the CTA waived section 41 by "participat[ing] in discovery in this cause and discuss[ing] settlement" and that the claims representative's conduct estopped the CTA from asserting plaintiff's failure to file the statutorily required notice as a bar to his claim. He contends that the claims representative's request that certain documents be sent to him should act as a waiver by the CTA of the requirement that notice be sent to the secretary of the board and to the CTA's general counsel. He maintains that the claims representative's conduct and statements were intended to lull him into a false sense of security and to cause him to rely upon the representations of the claims representative that formal notice was not required in this case.

Section 41 requires that any person who is about to bring a lawsuit against the CTA to recover for personal injuries must file written notice "[w]ithin six (6) months from the date that such an injury was received or such cause of action accrued *** in the office of the secretary of the Board and also in the office of the General Attorney for the Authority." (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 341 (now 70 ILCS 3605/41 (West 1992)).) The section further provides that failure to file the statutorily required notice will result in the dismissal of plaintiff's action. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 341 (now 70 ILCS 3605/41 (West 1992)).) Illinois courts have recognized, however, that a CTA claims representative's prelitigation conduct can estop the CTA from asserting its rights under section 41. *Pothier v. Chicago Transit Authority* (1992), 238 Ill. App. 3d 702, 705, 606 N.E.2d 531, 533; *Searcy v. Chicago Transit Authority* (1986), 146 Ill. App. 3d 779, 784, 497 N.E.2d 410, 413.

The doctrine of equitable estoppel has been held to preclude the CTA from asserting plaintiff's noncompliance with section 41 as a bar to his personal injury claim if plaintiff "was led to detrimentally rely upon the conduct or statements of the [claims representative] and *** such reliance was in good faith." (*Pothier*, 238 Ill. App. 3d at 705, 606 N.E.2d at 533.) Whether the defense of estoppel is available to the plaintiff is a question of fact for the jury if there is evidence in the record of conduct or statements by the claims representative which may have led plaintiff to reasonably be-

lieve his claim would be settled without suit (*D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 838, 347 N.E.2d 463, 465, citing *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 307, 194 N.E.2d 565, 567) or "lull[ed] plaintiff into a false sense of security which caus[ed] him to delay the assertion of his rights" (*Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1143, 419 N.E.2d 465, 468) or was intended to prevent plaintiff "from ascertaining [his] legal rights and obligations" (*Murphy*, 191 Ill. App. 3d at 923, 548 N.E.2d at 406).

If there is no evidence in the record of conduct which rises to this level, then there is no factual question for the jury and it is proper for the court to dismiss plaintiff's complaint as a matter of law. (*Pothier*, 238 Ill. App. 3d at 705, 606 N.E.2d at 533; *Udstuen v. Patterson* (1990), 198 Ill. App. 3d 67, 69, 555 N.E.2d 750, 751; *Myers*, 94 Ill. App. 3d at 1143, 419 N.E.2d at 468; *D'Urso*, 37 Ill. App. 3d at 839, 347 N.E.2d at 466.) Additionally, "[t]he mere pendency of negotiations conducted in good faith *** is not sufficient to show a waiver of the statute and does not estop the defendant from asserting the defense." (*Myers*, 94 Ill. App. 3d at 1142-43, 419 N.E.2d at 468.) Accepting all the facts in the affidavit offered by plaintiff as true, we do not believe that plaintiff has raised a material question of fact on the issue of estoppel and, therefore, conclude that the trial judge was correct in disposing of plaintiff's complaint as a matter of law.

We believe that the facts of this case are analogous to the appellate court's recent decisions in *Sanders v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 505, 581 N.E.2d 211, and *Murphy v. Chicago Transit Authority* (1989), 191 Ill. App. 3d 918, 548 N.E.2d 403. In *Sanders*, plaintiff's attorney sent notice of intent to sue to the CTA's general counsel, but not to the secretary of the board as required by section 41. He also forwarded plaintiff's medical records and bills to the CTA's claims department and was assured by a claims representative that "settlement was proceeding." (*Sanders*, 220 Ill. App. 3d at 506, 581 N.E.2d at 212.) Plaintiff subsequently filed suit and the trial court dismissed her complaint because she neglected to send notice to the secretary of the board. (*Sanders*, 220 Ill. App. 3d at 507, 581 N.E.2d at 212.) Plaintiff's counsel argued that the CTA should be estopped from asserting plaintiff's failure to give proper notice because he reasonably relied to his detriment upon certain representations made by the claims representative. (*Sanders*, 220 Ill. App. 3d at 508, 581 N.E.2d at 213.) This court concluded that the defense of estoppel was not available to

the plaintiff because she was represented by an attorney and it was not alleged that the claims representative told her attorney not to comply with the requirements of section 41. *Sanders*, 220 Ill. App. 3d at 508, 581 N.E.2d at 214.

In *Murphy*, plaintiff's attorney addressed his notice of claim to "Claims Manager" at the Merchandise Mart and did not file any notice with the secretary of the board and the CTA's general counsel. Subsequently, his complaint was dismissed for failure to give proper notice. In an affidavit, plaintiff's attorney averred that he had several conversations with the claims manager and sent him documents and records. He asserted that he sent the notice to the claims manager because those were "the instructions he was given by the CTA claims manager over the telephone." (*Murphy*, 191 Ill. App. 3d at 922, 548 N.E.2d at 405.) Plaintiff's attorney argued on appeal that he was misled and lulled "into a false sense that the claim had been accepted and would be settled." *Murphy*, 191 Ill. App. 3d at 922, 548 N.E.2d at 406.

The *Murphy* court stated that "the CTA's mere receipt and acknowledgement of information or documents pertaining to a claim when the statutory notice is defective and the lawsuit has not been filed within six months" is insufficient to raise a question of fact on the defense of estoppel. (*Murphy*, 191 Ill. App. 3d at 922, 548 N.E.2d at 405.) The court reasoned that section 41 places a burden of strict compliance with its provisions on the plaintiff and, although it may seem "harsh," a person, especially plaintiff's attorney, "cannot rely on an agent of the CTA to give accurate information on processing a claim." *Murphy*, 191 Ill. App. 3d at 922, 548 N.E.2d at 405.

In the instant case, as in *Murphy*, there are no averments in affiant's affidavit which "amount to admissions of liability or attempts to prevent [plaintiff] from ascertaining legal rights and obligations." (*Murphy*, 191 Ill. App. 3d at 923, 548 N.E.2d at 406.) Additionally, it is not alleged that affiant was ever told to ignore section 41 or not to take all steps necessary to protect his client's interests. (See *Murphy*, 191 Ill. App. 3d at 922-23, 548 N.E.2d at 406.) In the words of the *Murphy* court,

> "[h]ad [plaintiff's] attorney checked the applicable statute he would have known of the preconditions for maintaining an action against the CTA. He would not have settled for vague assurances that everything was fine but would have taken steps to ensure that his client's interests were safeguarded." (*Murphy*, 191 Ill. App. 3d at 923, 548 N.E.2d at 406.)

An attorney has a duty to research the law and protect his client's interests, and representations which a court may find reasonable for a layman to rely upon will not necessarily be considered reasonable for an attorney to rely upon. (*Pothier*, 238 Ill. App. 3d at 710, 606 N.E.2d at 536.) We find such to be the case under these facts. Consequently, we hold that plaintiff failed to raise a question of fact on whether the CTA was estopped from asserting his failure to give proper written notice as a bar to his claim. Therefore, we conclude that the trial judge properly dismissed his suit as a matter of law.

■ Plaintiff's third contention is that the legislative scheme requiring a plaintiff to give notice under section 41 of the Transit Act, but not requiring such notice under the Tort Immunity Act, is unconstitutional and denies plaintiff the equal protection of the law. Plaintiff argues that there exists no reasonable basis for the requirement that a plaintiff give notice under the Transit Act, while not requiring the same under the Tort Immunity Act. He asserts that this statutory scheme violates equal protection because it is "arbitrary, capricious and unreasonable." He contends that to attempt to distinguish the CTA from other governmental agencies is to make a distinction without a difference. The CTA, on the other hand, maintains that Illinois case law supports the constitutionality of the difference between the Transit Act and the Tort Immunity Act and brings our attention to the Illinois Supreme Court case of *Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, 368 N.E.2d 105.

The Tort Immunity Act presently requires that any personal injury action against a local entity or any of its employees must be brought "within one year from the date that the injury was received or the cause of action accrued." (Ill. Rev. Stat. 1991, ch. 85, par. 8—101 (now 745 ILCS 10/8—101 (West 1992)).) If the action is not commenced within one year, plaintiff loses his right to sue. (Ill. Rev. Stat. 1991, ch. 85, par. 8—101 (now 745 ILCS 10/8—101 (West 1992)).) Unlike the Transit Act, however, the Tort Immunity Act does not require the plaintiff to file any notice of his intent to bring suit.

Prior to its repeal in 1986, however, section 8—102 required a person about to bring suit against a local entity to give notice "[w]ithin 1 year from the date that the injury or cause of action *** was received or accrued." (Ill. Rev. Stat. 1985, ch. 85, par. 8—102.) Additionally, section 8—101 provided for a two-year statute of limitations. (Ill. Rev. Stat. 1985, ch. 85, par. 8—101.) In *Fujimura*, the plaintiffs failed to comply with either the six-month notice re-

quirement or the one-year statute of limitations contained in section 41 of the Transit Act. The trial court declared that section 41 of the Transit Act violated equal protection and was unconstitutional on the grounds that there existed "no rational basis for, and no legitimate State interest justifying, the discriminatory effect of the six-month-notice and one-year-filing requirements contained in section 41." (*Fujimura*, 67 Ill. 2d at 509, 368 N.E.2d at 106.) The case was appealed directly to the Illinois Supreme Court.

The *Fujimura* court reversed, holding that a rational basis existed for distinguishing the CTA from other public entities in light of the CTA's unique function and activities. (*Fujimura*, 67 Ill. 2d at 516, 368 N.E.2d at 109.) In coming to its conclusion that the differing notice and limitations periods in the Acts bore "a rational relationship to a legitimate State purpose," the *Fujimura* court reasoned:

> "Classification of governmental entities based upon their functions and activities is clearly proper. The CTA was established to operate and maintain a mass transportation system in the Chicago metropolitan area. That is its sole function. *** [T]he magnitude of the defendant's operations, the extent of its personal injury litigation, the problem of blind cases, and the substantial burden of investigating completely even apparently minor accidents are still pertinent. In our judgment, a public entity having as its only purpose the operation of one of the largest mass transit systems in the United States performs a unique governmental function with its own peculiar problems having no parallel in the usual functions of other local governmental entities. There is an additional and substantial distinction in the differing standards by which the liability of the CTA and other public entities is to be measured. The CTA as a public carrier owes those whom it serves the highest degree of care [citation], in contrast to the varying, but consistently lower, standards applicable to other public entities." (*Fujimura*, 67 Ill. 2d at 513, 368 N.E.2d at 108.)

We believe that the *Fujimura* rationale is as applicable to the present legislative scheme as it was to the differences between the Transit Act and the Tort Immunity Act in 1977. The plaintiff responds, however, that the reasoning of the *Fujimura* court "is not sound" and, consequently, we should not follow its reasoning.

We are mindful of the last time an appellate court attempted to reverse an Illinois Supreme Court decision in a case involving the

CTA. (See *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1.) To say the least, the supreme court did not react kindly and we do not desire to tempt fate twice. It is fundamental that the appellate court does not have the authority to abandon supreme court precedent. (*Rickey*, 98 Ill. 2d at 551, 457 N.E.2d at 3.) If precedent is not followed, "the uniformity and stability of decision, which is essential to the proper administration of justice, will be destroyed." (*Rickey*, 98 Ill. 2d at 551, 457 N.E.2d at 3.) We need not discuss at length the importance of the doctrine of *stare decisis*. (*Rickey*, 98 Ill. 2d at 552, 457 N.E.2d at 3.) Therefore, we reaffirm our support of the *Fujimura* decision. (See *Medina v. Taylor* (1989), 185 Ill. App. 3d 808, 813, 542 N.E.2d 33, 36 (the limitation provisions in the Transit Act have a legitimate State purpose and are not unconstitutional).) Consequently, we hold that the legislative scheme requiring a plaintiff to give notice under section 41 of the Transit Act, but not requiring such notice under the Tort Immunity Act, does not deny plaintiff equal protection of the laws.

 Finally, plaintiff contends that the limitations provisions in the Transit Act are applicable only to the CTA and not to the CTA's employee. Therefore, plaintiff asserts that even if we affirm the dismissal of the action against the CTA, we should reinstate the action against the CTA's employee, Carter. When the issue has arisen, this court has held that the limitation provisions in the Transit Act " 'apply to actions brought against CTA employees as well as the CTA.' " (*Sanders*, 220 Ill. App. 3d at 507, 581 N.E.2d at 213, quoting *Medina*, 185 Ill. App. 3d at 812, 542 N.E.2d at 35.) Consequently, because we affirm the dismissal of plaintiff's claim against the CTA, we must also affirm the dismissal against its employee, Carter.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.