THIRD DIVISION

April 25, 2001

(
NUNC
 
PRO
 
TUNC
 March 30, 2001)

No. 1--00--1299

LAWRENCE CIONE, 

Plaintiff-Appellant,

v.

CHICAGO TRANSIT AUTHORITY, 

Defendant-Appellee. 

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

John G. Laurie, 

Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Lawrence Cione appeals from an order of the circuit court granting defendant Chicago Transit Authority's (CTA) motion to dismiss plaintiff's complaint with prejudice.  On appeal, plaintiff contends that the trial court abused its discretion in dismissing his complaint based on its determination that his statutory notice pursuant to section 41 of the Metropolitan Transit Authority Act (Transit Act) (70 ILCS 3605/41 (West 1998)) was insufficient.  Plaintiff also contends that section 41 violates the Illinois Constitution (Ill. Const. 1970, art. IV, §13) as applied and is special legislation.  For the reasons set forth below, we affirm.

STATEMENT OF FACTS

Plaintiff was injured on January 15, 1999, when a CTA bus struck him while he was entering his car.  On June 3, 1999, plaintiff served a section 41 notice of claim upon the CTA in which he stated that his attending physician was the Parkview Orthopedic Group located at 7600 College Drive, Palos Hills, Illinois.  On January 3, 2000, plaintiff filed a complaint against the CTA for his injuries.  Thereafter, defendant filed a motion to dismiss the complaint, arguing that plaintiff's notice was defective and it failed to strictly comply with the requirements of section 41 because plaintiff listed a clinic as the attending physician, not a physician's name.  After full briefing, the trial court conducted a hearing and, on March 20, 2000, it granted defendant's motion to dismiss.  This appeal followed.

ANALYSIS

I.  Propriety of Section 41 Notice

The first issue before this court is whether plaintiff complied with the notice provision of the Transit Act.  Section 41 of the Transit Act provides:

"No civil action shall be commenced in any court against the Authority by any person for any injury to his person unless it is commenced within one year from the date that the injury was received or the cause of action accrued.  Within six (6) months from the date that such an injury was received or such cause of action accrued, any person who is about to commence any civil action in any court against the Authority for damages on account of any injury to his person shall file in the office of the secretary of the Board and also in the office of the General Counsel for the Authority either by himself, his agent, or attorney, a statement, in writing, signed by himself, his agent, or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred and the name and address of the attending physician, if any.  If the notice provided for by this section is not filed as provided, any such civil action commenced against the Authority shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing.

Any person who notifies the Authority that he or she was injured or has a cause of action shall be furnished a copy of Section 41 of this Act.  Within 10 days after being notified in writing, the Authority shall either send a copy by certified mail to the person at his or her last known address or hand deliver a copy to the person who shall acknowledge receipt by his or her signature.  When the Authority is notified later than 6 months from the date the injury occurred or the cause of action arose, the Authority is not obligated to furnish a copy of Section 41 to the person.  In the event the Authority fails to furnish a copy of Section 41 as provided in this Section, any action commenced against the Authority shall not be dismissed for failure to file a written notice as provided in this Section.  Compliance with this Section shall be liberally construed in favor of the person required to file a written statement.
"  70 ILCS 3605/41 (West 1998).

It is the plaintiff's burden to strictly comply with each element designated in section 41 and, absent such compliance, his cause of action will be dismissed.  
Dimeo v. Chicago Transit Authority
, 311 Ill. App. 3d 152, 155, 724 N.E.2d 92 (1999); 
Yokley v. Chicago Transit Authority
, 307 Ill. App. 3d 132, 136, 717 N.E.2d 451 (1999).  "Notices missing even a single element are defective, as well as notices containing an incorrect element."  
Dimeo
, 311 Ill. App. 3d at 155.  A plaintiff is required to strictly comply with the requirements of section 41 even when the CTA has full knowledge or notice of the injury.  
Dimeo
, 311 Ill. App. 3d at 155; 
Yokley
, 307 Ill. App. 3d at 137.

Plaintiff contends that the trial court abused its discretion in dismissing his complaint, arguing that he provided complete and correct information and that all necessary elements were contained on the face of his notice.  He argues that the clinic practice group, that he named as his attending physician and that provided his treatment, is the attending physician under the eyes of the law, citing to agency principles in other areas of the law, including medical malpractice actions, licensing procedures, and billing procedures.  Additionally, plaintiff contends that the practice of medicine has changed since the enactment of section 41 which is something the legislature could not have foreseen.  Plaintiff also argues that the CTA could easily have obtained his medical records from the clinic if it wanted to do so.  Lastly, plaintiff argues that by concluding that he failed to comply with the notice requirements, the trial court placed an unfair burden on him because the statute states that "[c]
ompliance with this Section shall be liberally construed in favor of the person required to file a written statement.
"  70 ILCS 3605/41 (West 1998).

Defendant contends that the correct standard of review of the trial court's ruling is 
de novo
.  Substantively, defendant maintains that a practice group is not a substitute for naming an attending physician and the agency theory of 
respondent superior
 is irrelevant in determining the propriety of plaintiff's notice under section 41.  Defendant also contends that the CTA has no duty to obtain plaintiff's records and, therefore, plaintiff's argument that it could have done so is irrelevant.  Lastly, defendant argues that the "liberal construction" principle refers to whether the CTA's duty to provide a potential claimant with a copy of section 41 was triggered, not whether a plaintiff's notice was sufficient.   We first observe that, contrary to plaintiff's contention, our standard of review upon a trial court's granting of a motion to dismiss is 
de novo
.  
Joseph v. Chicago Transit Authority
, 306 Ill. App. 3d 927, 930, 715 N.E.2d 733 (1999).

Several courts have addressed the attending physician element of section 41.  In 
Yokley
, although the more prominent issue was the fact that the plaintiff provided a nonexistent location as the accident location, the plaintiff also listed a medical center and its address as the attending physician.  
Yokley
, 307 Ill. App. 3d at 134.  In finding that the failure to name an attending physician compounded the insufficiency of the notice, the court stated that "[p]laintiff's failure to list an attending physician precluded the CTA from contacting that individual."  
Yokley
, 307 Ill. App. 3d  at 138.  In 
Margolis v. Chicago Transit Authority,
 69 Ill. App. 3d 1028, 388 N.E.2d 190 (1979), the plaintiff listed as her treating physician a doctor who had treated her for many years for a condition unrelated to the injuries she received in the accident.  The court concluded that the plaintiff had failed to comply with the requirements of section 41 and that her lawsuit was properly dismissed.  
Margolis
, 69 Ill. App. 3d at 1035.  Similarly, in 
Thomas v. Chicago Transit Authority
, 29 Ill. App. 3d 952, 331 N.E.2d 216 (1975), the plaintiff listed the wrong attending physician in his notice to the CTA.  The court found that "[l]isting the wrong attending physician in the notice is tantamount to a complete omission of an essential element," and concluded that the plaintiff's notice was insufficient.  
Thomas
, 29 Ill. App. 3d at 955.  While the latter two cases are not directly on point, they are instructive as to what is necessary to satisfy the requirements of section 41.  In addition, it would appear from 
Yokley 
that the court did conclude that naming a practice group along with its address did not constitute compliance with section 41's requirement that a plaintiff name an attending physician.  We agree.

We believe that the legislature intended, by using the term "attending physician," that a claimant is required to list a specific individual, a human being, not a practice group.  A practice group is not a physician; it is a corporate entity.  We also find plaintiff's contention that a group is viewed as the attending physician in other aspects of the law is irrelevant to our determination of what the legislature intended when it enacted section 41.  Section 41 is a specifically enacted provision directed at claims against a single entity, the CTA.  Additionally, while it is true that the practice of medicine has changed since the legislature enacted section 41, it is reasonable to presume that the legislature, which regulates the medical profession extensively and which does not live in a vacuum, is aware of such changes.  However, it has not amended section 41 to allow a claimant to name a clinic or practice group instead of a specific physician.  It could easily do so or have done so had it so desired.  See 
Travenol Laboratories, Inc. v. Johnson
, 195 Ill. App. 3d 532, 536, 553 N.E.2d 14 (1990).  However, the legislature has not amended section 41 in this respect.

Moreover, while the CTA possibly could have obtained plaintiff's records and ascertained who his attending physician was, the CTA has no duty to do so and this argument is irrelevant to the validity of plaintiff's notice.  See 
Dimeo
, 311 Ill. App. 3d at 155.  Lastly, with respect to plaintiff's "unfair burden" argument, this contention has previously been rejected.  In 
Yokley
, the court held that the liberal construction language 

"applies to initial communications from possible claimants, not to section 41 statutory notices that these claimants might file later.  ***  The sentence regarding liberal construction comes at the end of the new paragraph [added and effective July 1998].  The sentence obviously requires the CTA to liberally construe the written communications it receives from possible claimants as constituting sufficient notification that a cause of action may exist so that these potential claimants are sent a copy of the section 41 statute by the CTA.  The clear import of the amendment is that the legislature did not intend that compliance with the notification elements of section 41 be liberally construed."  
Yokley
, 307 Ill. App. 3d at 138-39.

Based on the foregoing, we conclude that plaintiff's naming of a practice group, rather than a specific physician, as his attending physician did not constitute strict compliance with section 41.  Accordingly, the trial court properly dismissed plaintiff's complaint.

II.    Constitutionality of Section 41:

Special Legislation

Plaintiff next contends that section 41 violates the special legislation clause of the Illinois Constitution.  Plaintiff maintains that the section creates two classes of individuals: (1) those who file a section 41 notice and must identify an attending physician and (2) those who file a lawsuit within six months but do not file a section 41 notice and need not identify an attending physician.  According to plaintiff, because individuals in the latter category need not disclose their attending physician, the two classes are treated differently.  It is plaintiff's position that the notice requirement of section 41 is disposed of if one files a lawsuit within the six-month period required for notice.

Defendant first contends that plaintiff lacks standing to raise this constitutional issue.  Defendant also argues that even if we were to conclude that filing a complaint within the six-month period can "cure" a defective or nonexistent notice, thus creating two classes of claimants, this decision is a function performed by the court, not the legislature, and it is irrelevant since the special legislation principle applies only to acts of the legislature.  Defendant further maintains that section 41 does not create different classes and that the same choice is available to all potential claimants: everyone is required to file a section 41 notice.  Lastly, defendant contends that even if section 41 makes different classifications, it withstands a rational basis analysis.  According to defendant, when a notice is defective but suit is filed within six months, the CTA has an opportunity to investigate.  Conversely, when a defective notice is filed and no suit is filed within six months, the CTA has no opportunity to investigate.  Defendant maintains therefore that the ability to investigate is a rational basis for creating different classifications, assuming, 
arguendo
, that section 41 does so, and for allowing a claimant to cure a defective notice if suit is filed within six months.

Plaintiff responds that he has standing to make this challenge because if a claimant files suit within six months, he or she has no occasion to complain about section 41 and, therefore, would have no opportunity to raise the constitutional issue.  Accordingly, only a claimant, such as plaintiff, who does not file a lawsuit within six months, has the opportunity to raise the constitutional issue.  Additionally, plaintiff contends that there is no rational basis for differentiating between the two classes of individuals.

Article 4, section 13, of the Illinois Constitution provides:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable.  Whether a general law is or can be made applicable shall be a matter for judicial determination."  Ill. Const. 1970, art. IV, §13.

With respect to the special legislation clause of section 13, the law is well settled:

"While this section prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or group to the exclusion of others similarly situated, it does not prohibit all classifications.  [Citation.]  Only arbitrary legislative classifications are prohibited.  [Citation.]  If any set of facts can reasonably be conceived that justifies the distinction of the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control and may enact laws applicable only to the persons or objects."  
In re Village of Hanover Park
, 312 Ill. App. 3d 834, 838, 727 N.E.2d 660 (2000).

The legislature's classifications are presumed valid and any doubts as to their validity are to be resolved in favor of upholding the classifications.  
Village of Hanover Park
, 312 Ill. App. 3d at 838.  Because the purpose of the special legislation clause is to prevent the legislature from creating arbitrary classifications "that discriminate in favor of a select group without a sound, reasonable basis," the law dictates that "a party raising a special legislation claim must, at the very least, prove the existence of an arbitrary legislative classification."  
Chavda v. Wolak
, 188 Ill. 2d 394, 400, 721 N.E.2d 1137 (1999).  

We discern no legislative classification on the face of section 41, nor from its plain language.  Section 41 provides that "
any person
 who is about to commence any civil action *** shall file *** a statement."  (Emphasis added.)  70 ILCS 3605/41 (West 1998).  Additionally, section 41 states: "
If the notice provided for by this section is not filed as provided, any such civil action commenced against the Authority shall be dismissed
."  70 ILCS 3605/41 (West 1998).  Clearly, the legislature has not created any classes.  Based on the language of the statute, the notice requirement applies to all persons who intend to file an action against the CTA.  Moreover, the legislative language does not exempt those individuals who file an action within the six-month period from filing a notice.  Again, anyone who intends to commence an action against the CTA must file a notice with it.  As defendant contends, if a person is excused from filing a notice when he or she files an action within the six-month period, thereby potentially creating two classes, this would be a decision by the court, not the legislature.
(footnote: -6)  As such, the special legislation principle does not apply to the instant case.

We conclude that there is no classification in section 41 that "discriminates in favor of a select group, let alone one that does so arbitrarily or without a sound, reasonable basis."  
Chavda
, 188 Ill. 2d at 400-01.  Accordingly, because section 41, on its face, contains no legislative classification, plaintiff's special legislation claim "necessarily fails."  
Chavda
, 188 Ill. 2d at 401.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HALL, P.J., and CERDA, J., concur.

FOOTNOTES
-6:
We need not decide whether a party is excused from filing a notice if he or she files an action within the six-month period because that issue is not before this court.  We do note, however, that several cases have so indicated in 
dicta
.  
Joseph v. Chicago Transit Authority
, 306 Ill. App. 3d 927, 933, 715 N.E.2d 733 (1999); 
Streeter v. Chicago Transit Authority
, 272 Ill. App. 3d 921, 923, 651 N.E.2d 579 (1995); 
Murphy v. Chicago Transit Authority
, 191 Ill. App. 3d 918, 921, 548 N.E.2d 403 (1989).