SIXTH DIVISION
May 4, 2007

No. 1-05-3152

| | | |
|---|---|---|
| GENEVA WHITE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 L 16456 |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | The Honorable |
| | ) | Sharon Johnson Coleman, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following trial, the jury entered judgment against defendant Chicago Transit Authority (CTA) in the amount of $220,220 in a negligence action filed by plaintiff Geneva White. In a posttrial motion, the CTA repeated its prior unsuccessful claims that the notice provided by plaintiff failed to strictly comply with section 41 of the Metropolitan Transit Authority Act (Act) (70 ILCS 3605/41 (West 2004)) because it failed to provide an accurate location for her accident. The trial court denied the motion and defendant appealed, arguing that the trial court erred when it failed to dismiss plaintiff's claim because she did not strictly comply with section 41's notice requirements. We reverse.

Plaintiff alleged that on May 30, 1997, she was departing a CTA train when she fell on oil or grease that was present on the train platform and suffered injuries. On October 8, 1997, she filed a section 41 notice with the CTA, identifying the location of her accident as the "Railway Station at Randolph and Washington." Plaintiff also filed a complaint against the CTA in 1997, which she voluntarily dismissed on January 7, 2002. Plaintiff filed a second complaint on December 31, 2002.

The CTA filed a motion to dismiss plaintiff's second complaint on January 27, 2004, alleging that plaintiff did not strictly comply with section 41 of the Act because she listed a non-

existent location as the place of her accident. Specifically, the CTA argued that there is no "railway station at Randolph and Washington," and that these two streets run parallel to each other and do not intersect. Judge Larsen denied the CTA's motion, finding that the CTA waived its section 41 defense because the CTA failed to raise it when plaintiff's first lawsuit was pending and that it was too late in the second proceeding to do so. Notwithstanding waiver, Judge Larsen found that plaintiff's section 41 notice "was sufficient." The CTA filed a motion to reconsider. Judge Larsen entered a *nunc pro tunc* order denying the CTA's motion and clarifying her previous order by finding strict compliance with section 41.

Immediately before trial, the CTA filed a motion for summary judgment, again arguing that plaintiff failed to strictly comply with section 41. Judge Coleman, the trial judge, observed that Judge Larsen had already ruled on that issue and denied the motion, stating "This Court will not be reviewing it. Obviously, you may have an issue on appeal."

The case proceeded to trial. At the conclusion of plaintiff's case, the CTA moved for a directed verdict, arguing again that plaintiff's notice failed to strictly comply with section 41. Though Judge Coleman found that Judge Larsen initially relied on an improper standard and that the location provided in plaintiff's motion "appear[ed] to be a station that doesn't exist," she denied the CTA's motion, stating, "Now if Judge Larsen's ruling was wrong which I am not going to overturn because that is not my job, if her ruling was wrong, the appellate court will take care of it." The jury returned with a verdict in favor of plaintiff, awarding her $220,220. The CTA filed a posttrial motion challenging the court's decision not to grant a directed verdict, which was also denied.

On appeal, the CTA first argues that the trial court's finding of waiver was erroneous because the CTA objected to the notice 13 months after plaintiff filed her second complaint and 13 months before the case went to trial. Plaintiff, in turn, contends that the trial court's finding of

waiver was proper because the CTA first asserted its section 41 defense seven years after she first commenced action. Alternatively, plaintiff argues there was waiver when the CTA failed to send her a copy of section 41 after she filed her second complaint.

At the hearing on the CTA's motion to dismiss, Judge Larsen based her finding of waiver on the fact that the CTA never raised this issue "during all of the years the case was pending in the first filing." However, plaintiff voluntarily dismissed her initial suit, which was filed in 1997, on January 7, 2002, and filed a second complaint on December 31, 2002. Plaintiff's second complaint constituted a separate and distinct action, not a reinstatement of the first action. See Dubina v. Mesirow Realty Development, Inc., 178 Ill. 2d 496, 504 (1997); Calamari v. Drammis, 286 Ill. App. 3d 420, 426 (1997). Thus, although the CTA did not assert a section 41 defense in plaintiff's initial action, this did not preclude the CTA from raising it in the new action.

In this case, defendant filed a motion to dismiss based on defective notice on January 27, 2004, within 13 months after the commencement of plaintiff's second action, and 13 months before trial began. Moreover, the CTA continued to reassert its defense that plaintiff failed to strictly comply with section 41 after its motion to dismiss was denied. Altogether, the CTA filed four additional motions, including a motion to reconsider, a motion for summary judgment, a motion for a directed verdict, and a posttrial motion, all of which challenged plaintiff's notice. Based on these facts, we find that there was no waiver.

We are not persuaded by plaintiff's argument that the CTA's failure to send her a copy of section 41 resulted in the waiver of its right to challenge her notice. Following plaintiff's injury, section 41 was amended to contain a requirement that the CTA send a claimant a copy of section 41 within 10 days of receiving notice that she suffered an injury. 70 ILCS 3605/41 (West 2004). The amendment further provides: "In the event the Authority fails to furnish a copy of section 41 as provided in this Section, any action commenced against the Authority shall not be dismissed

for failure to file a written notice as provided in this Section." 70 ILCS 3605/41 (West 2004). The amendment became effective on July 1, 1998, and plaintiff claims that this requirement would apply to her 2002 complaint, which was a new action following her voluntary dismissal. She argues that her 2002 complaint provided the CTA with notice of her injury and triggered the CTA's obligation to send her a copy of section 41. However, plaintiff ignores the portion of the amendment that provides: "When the Authority is notified later than 6 months from the date the injury occurred or the cause of action arose, the Authority is not obligated to furnish a copy of section 41 to the person." 70 ILCS 3605/41 (West 2004). Because plaintiff was injured in 1997, any notice provided by her 2002 complaint occurred well outside of the six-month period specified in the Act and, thus, the CTA did not have to provide her with a copy of section 41 and no waiver resulted from its failure to do so.

The CTA next maintains that plaintiff's case should have been dismissed because her notice, which identified a non-existent location as the place of her accident, failed to strictly comply with section 41. Section 41 mandates that any person who brings a civil suit against the CTA file a signed written statement that includes the following five elements: (1) the name of the person to whom the cause of action accrues; (2) the name and residence of the injured party; (3) the date and time of the accident; (4) the place or location of the accident; and (5) the name and address of any attending physician. 70 ILCS 3605/41 (West 2004). If the plaintiff fails to file proper notice within six months of her injury, the Act mandates that her claim be dismissed. 70 ILCS 3605/41 (West 2004).

The burden is on plaintiffs to strictly comply with section 41's notice requirement. See, *e.g.*, Johnson v. Chicago Transit Authority, 366 Ill. App. 3d 867, 870 (2006); Hemphill v. Chicago Transit Authority, 357 Ill. App. 3d 705, 711 (2005); Curtis v. Chicago Transit Authority, 341 Ill. App. 3d 573, 576 (2003). Notably, plaintiff expressly concedes that all judicial decisions

construing section 41 hold that strict compliance with the notice provision is required and the CTA's actual knowledge of notice elements does not excuse a plaintiff's failure to strictly comply with section 41.

If the plaintiff fails to provide the correct location of her accident or lists a non-existent location in her notice, she fails to strictly comply with section 41, and her claim must be dismissed. See, *e.g.*, Hemphill, 357 Ill. App. 3d at 712-13; Barrera v. Chicago Transit Authority, 349 Ill. App. 3d 539, 542-43 (2004); High v. Chicago Transit Authority, 345 Ill. App. 3d 964, 967-68 (2004); Davis v. Chicago Transit Authority, 326 Ill. App. 3d 1023, 1028 (2001); Yokley v. Chicago Transit Authority, 307 Ill. App. 3d 132, 137 (1999).

In this case, plaintiff's section 41 notice described the location of her accident as the "Railway Station at Randolph and Washington." There is no CTA railway station at Randolph and Washington, however. Randolph and Washington streets are parallel and do not intersect. Though both parties acknowledge that there is a long continuous CTA platform on State Street with entrances on Lake, Randolph, and Washington Streets, there is no railway station at Randolph and Washington, the place where plaintiff claims her accident occurred. Despite these facts, Judge Larsen denied the CTA's motion to dismiss and its motion to reconsider, finding first that plaintiff's notice was "sufficient," and later that her notice strictly complied with section 41. Although Judge Coleman, the trial judge, expressly acknowledged that Judge Larsen initially applied an incorrect standard and that the location in plaintiff's notice "appear[ed] to be a station that doesn't exist," she declined to correct Judge Larsen's prior ruling. However, neither the initial error nor the abdication overcome the deficiency of plaintiff's section 41 notice.

Accordingly, we reverse the judgment of the circuit court.

Reversed.

JOSEPH GORDON and McNULTY, JJ., concur.